PARKDALE AMERICA, LLC, PLAINTIFF v. REGINALD S. HINTON, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE NORTH CAROLINA DEPARTMENT OF REVENUE, DEFENDANT

No. COA09-10

(Filed 6 October 2009)

**Taxation— sales and use tax—exemption—packaging materials**

The trial court did not err in a sales and use tax case by granting summary judgment in favor of plaintiff because the packaging materials plaintiff used to ship goods to its customers qualified for the tax exemption under N.C.G.S. § 105-164.13(23)(b).

Appeal by defendant from order entered 13 August 2008 by Judge Nathaniel J. Poovey in Gaston County Superior Court. Heard in the Court of Appeals 31 August 2009.

*Katten Muchin Rosenman LLP, by Deborah L. Fletcher and Christopher A. Hicks, for plaintiff-appellee.*

*Attorney General Roy Cooper, by Assistant Attorney General Tenisha S. Jacobs, for defendant-appellant.*

HUNTER, Robert C., Judge.

Defendant Reginald S. Hinton, the Secretary of the North Carolina Department of Revenue ("DOR"), appeals from the trial court's entry of summary judgment in favor of plaintiff Parkdale America, LLC. DOR primarily argues that Parkdale failed to satisfy its burden of establishing that the packaging materials it uses to ship goods to its customers qualifies for an exemption under North Carolina's sales and use tax, and, therefore, the trial court erred in granting summary judgment to Parkdale. Because we conclude that Parkdale's packaging material is encompassed by the tax exemption, we affirm.

## Facts

Parkdale manufactures and sells industrial yarn. As the yarn is spun, it is wound onto cones. To ship its cones of yarn to customers, Parkdale uses the "Yarn Pak," which is manufactured by Shuert Industries, Inc. Parkdale's sales contracts with its customers require the return of the Yarn Paks for recycling and reuse, and Parkdale retains ownership of the Yarn Paks.

The Yarn Pak consists of several interlocking components—a bottom pallet, a top pallet, and up to six dividers—that allow it to hold up to 100 individual cones of yarn. The bottom pallet of the Yarn Pak is approximately 55 inches long and 45 inches wide and made of high-density polyethylene. The bottom pallet is roughly 1/4 of an inch thick and weighs approximately 22 pounds. The plastic bottom is molded into a "grid pattern . . . to cradle dozens of different configurations of tubes and cones of yarn." Around the circumference of the pallet is a lip extending upwards approximately three to four inches. The lip covers the bottom half of the yarn cones and, along with the molded indentations, holds the cones in place in the pallet.

After the yarn cones are placed in the Yarn Pak's bottom pallet, a divider is placed on top of the cones. The divider is about 1/8 of an inch thick and weighs roughly seven pounds. Similar to the bottom pallet of the Yarn Pak, the divider is 55 inches long and 45 inches wide. Each divider also has a lip on all four sides that extends downward and covers 1 1/2 inches of the top of the yarn cones positioned in the bottom pallet. Up to seven layers of cones may be stacked in a Yarn Pak, using six dividers.

The Yarn Pak top pallet is similar to the bottom, made of polyethylene with molded indentations to fit around the cones of yarn.

Like the bottom pallet and dividers, the top pallet is 55 inches long, 45 inches wide, and a 1/4 of an inch thick. It also weighs approximately 22 pounds. The top pallet also has a lip that extends roughly three inches downward on all four sides, holding the top layer of cones in place. Parkdale normally buys the Yarn Pak by the set, including the top and bottom pallets and the dividers.

After the cones of yarn are packed into the Yarn Pak, Parkdale typically wraps it in "shrink wrap," overlapping the edges of the bottom and top pallets as well as the dividers. The shrink wrap is not part of the Yarn Pak and is not necessary to hold the Yarn Pak together. It is used as a protective barrier against dust and moisture during shipping.

Also, in some instances, Parkdale uses a single 1/2 inch plastic band, strapped vertically around the Yarn Pak for additional security. Whether Parkdale uses the plastic band is up to the customer and it routinely ships Yarn Paks without the band.

On 13 June 2006, DOR issued a Notice of Sales and Use Tax Assessment to Parkdale for the period of 1 January 2003 through 31 December 2005. DOR assessed Parkdale $223,492.06 based on Parkdale's purchase of the Yarn Packs. The total assessment included $164,359.67 in taxes, $41,089.92 in penalties, and $18,042.47 in interest. Under protest, Parkdale paid $186,875.06 in taxes and interest on 28 November 2006. In a 4 January 2007 letter, DOR waived the $41,089.92 in penalties. When DOR denied Parkdale's request to refund the taxes and interest paid, Parkdale filed suit to recover these amounts. After filing an answer generally denying Parkdale's claim, DOR moved for summary judgment. In an order entered 13 August 2008, the trial court denied DOR's motion and granted summary judgment to Parkdale, ordering DOR to refund Parkdale $186,875.06, plus interest. DOR timely appealed to this Court.

## Discussion

DOR argues that the trial court erred in granting summary judgment to Parkdale. On appeal, an order granting summary judgment is reviewed de novo. *McCutchen v. McCutchen*, 360 N.C. 280, 285, 624 S.E.2d 620, 625 (2006). "Summary judgment is appropriate if 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.'" *Forbis v. Neal*, 361 N.C. 519, 523-24, 649 S.E.2d 382, 385 (2007) (quoting N.C. R. Civ. P. 56(c)).

On appeal, DOR contends that it is entitled to judgment as a matter of law because Parkdale failed to establish that its Yarn Paks qualify for an exemption under the North Carolina Sales and Use Tax Act, N.C. Gen. Stat. § 105-164.1 *et seq.* (2007). Both DOR and Parkdale focus on N.C. Gen. Stat. § 105-164.13(23) (2007), which provides an exemption from the use tax for specified "packaging items." Pertinent here, the statute provides an exemption for: "A container that is used as packaging by the owner of the container or another person to enclose tangible personal property for delivery to a purchaser of the property and is required to be returned to its owner for reuse." N.C. Gen. Stat. § 105-164.13(23)(b) ("section (23)(b)"). Parkdale, as the party "claim[ing] an exemption or exception from tax coverage," bears the "burden of bringing [it]self within the exemption or exception." *Canteen Service v. Johnson, Comr. of Revenue*, 256 N.C. 155, 163, 123 S.E.2d 582, 587 (1962).

At oral argument, DOR conceded that, for purposes of section (23)(b), a Yarn Pak is a "container"; that it is "used as packaging"; that it holds "tangible personal property"; and that it is "required to be returned to [Parkdale] for reuse." DOR claims, however, that Parkdale is not entitled to the exemption because "[t]he plain language [of the statute] only exempts containers that *enclose* tangible personal property." (Emphasis added.)

"A question of statutory interpretation is ultimately a question of law" and the first principle of statutory interpretation is to "ascertain the intent of the legislature and to carry out such intention to the fullest extent." *Brown v. Flowe*, 349 N.C. 520, 523, 507 S.E.2d 894, 896 (1998) (internal citations and quotation marks omitted); *accord Watson Industries v. Shaw, Comr. of Revenue*, 235 N.C. 203, 211, 69 S.E.2d 505, 511 (1952) ("The legislative intent is the essence of the law and the guiding star in the interpretation thereof."). The primary "consideration in determining legislative intent is the words chosen by the legislature." *O & M Indus. v. Smith Eng'r Co.*, 360 N.C. 263, 267-68, 624 S.E.2d 345, 348 (2006). In interpreting statutes, courts "first determine whether the statute is clear and unambiguous, and if so, [the court] appl[ies] the words in their plain and definite meaning." *State v. Hinton*, 361 N.C. 207, 211, 639 S.E.2d 437, 440 (2007). Only where the statutory language is ambiguous is "judicial construction [necessary] to ascertain the legislative will." *Burgess v. Your House of Raleigh*, 326 N.C. 205, 209, 388 S.E.2d 134, 137 (1990).

Neither party contends that section (23)(b)'s use of "enclose" is ambiguous, nor do we perceive the term to be ambiguous. Instead, as

the term is not defined in the statute, the parties focus on the ordinary meaning of the word. "Where words of a statute are not defined, the courts presume that the legislature intended to give them their ordinary meaning determined according to the context in which those words are ordinarily used." *Regional Acceptance Corp. v. Powers*, 327 N.C. 274, 278, 394 S.E.2d 147, 149 (1990). Where, as here, there is no "contextual definition, courts may look to dictionaries to determine the ordinary meaning of words within a statute." *Perkins v. Arkansas Trucking Servs., Inc.*, 351 N.C. 634, 638, 528 S.E.2d 902, 904 (2000).

The word "enclose" is defined as: "to close in"; "to fence off or in"; or "to seize or grasp securely: hold." *Webster's Third New International Dictionary* 746 (1968). In *State v. Cockerham*, 155 N.C. App. 729, 574 S.E.2d 694, *disc. review denied*, 357 N.C. 166, 580 S.E.2d 702 (2003), this Court similarly relied on the dictionary definition of the word "enclose" in interpreting a criminal statute, noting that the term means " '[t]o surround on all sides; fence in; close in' "; or " '[t]o contain, especially as to shelter or hide . . . .' " *Id.* at 734, 574 S.E.2d at 698 (quoting *The American Heritage Dictionary of the English Language* 430 (1978)) (first and second alterations added).

As the trial court observed at the summary judgment hearing, the Yarn Paks satisfy all the definitions of "enclose" set out in *Cockerham* except the definition that they "surround on all sides." The color photographs in the record support this conclusion, showing the Yarn Paks as comprising a bottom pallet and a top pallet, each with a lip of several inches that covers the cones of yarn. The pallets also have molded indentations in them so that when the cones and dividers are layered, the pallets, cones, and dividers lock into place. When properly stacked so that the components are interlocking, if the Yarn Pak is placed on its side, the yarn cones do not fall out. Thus the Yarn Pak is a container that "encloses" tangible personal property, qualifying for the section (23)(b) tax exemption.

Focusing on *Cockerham's* definition that to "enclose" means " '[t]o surround on all sides,' " *id.*, DOR appears to argue that in order for the Yarn Paks to "enclose" the yarn cones, the Yarn Paks must completely or fully enclose them, without "leav[ing] the yarn exposed between the pallets and separators." Adopting DOR's position that a container must "completely" or "fully" enclose property in order to qualify for the exemption would effectively add language to N.C. Gen. Stat. § 105-164.13(23)(b) not adopted by the Legislature. This Court

has "no power to add to or subtract from the language of the statute." *Ferguson v. Riddle*, 233 N.C. 54, 57, 62 S.E.2d 525, 528 (1950).

Moreover, the three to four inch lip that runs around the circumference of the bottom and top pallets of the Yarn Pak do, in fact, surround the cones on all sides. That the lips do not completely or fully encapsulate the cones does not mean that they are not "enclosed" for purposes of section (23)(b). As the trial court remarked: "If you have got a horse and you want to fence him in or enclose him, then you fence him in but that doesn't mean you can't stick your hand through the fence."

In arguing that the General Assembly must have intended to exclude "packaging items" like the Yarn Pak from the exemption in section (23)(b), DOR relies extensively on legislative committee reports and communications between DOR and the committee considering the proposed exemption. Our Supreme Court has stressed, however, that "[i]n determining legislative intent, [courts] do[] not look to the record of the internal deliberations of committees of the legislature considering proposed legislation." *Electric Supply Co. v. Swain Electrical Co.*, 328 N.C. 651, 657, 403 S.E.2d 291, 295 (1991). Nor is "[t]estimony, even by members of the Legislature which adopted the statute, as to its purpose and the construction intended to be given by the Legislature to its terms, . . . competent evidence upon which the court can make its determination as to the meaning of the statutory provision." *Milk Commission v. Food Stores*, 270 N.C. 323, 332-33, 154 S.E.2d 548, 555 (1967). Thus the committee reports and memoranda are not proper considerations in interpreting N.C. Gen. Stat. § 105-164.13(23)(b). *See N.C. Dep't of Corr. v. N.C. Med. Bd.*, 363 N.C. 189, 202, 675 S.E.2d 641, 650 (2009) ("declin[ing]" to consider as indicative of legislative intent committee's version of bill omitting certain provision).

In any event, the concern expressed in the communications between DOR and the legislative committee was whether the language in the proposed legislation was overly broad in that it might exempt "railroad pallets" from the use tax. Although the Yarn Pak is in part comprised of a bottom and top "pallet," the Yarn Pak as a whole is distinct from railroad pallets, which are used as skid plates to transport heavy objects other than cones of yarn. Our holding in this case relates only to Yarn Paks—not railroad pallets.

In support of its argument that the Yarn Paks do not "enclose" property as that term is used in section (23)(b), DOR cites to *In re*

*Clayton-Marcus Co.*, 286 N.C. 215, 219, 210 S.E.2d 199, 202 (1974), where the Supreme Court held that "a provision in a tax statute providing an exemption from the tax, otherwise imposed, is to be construed strictly against the taxpayer and in favor of the State." As the Court in *Clayton-Marcus* further explained, however, this "rule[] come[s] into play . . . only when there is ambiguity in the statute. When the meaning of the statute is clear, there is no need for construction and the clear intent of the Legislature must be given effect by the courts." *Id.* Thus, the "special canons of statutory construction" that apply "[w]hen the [ambiguous] statute under consideration is one concerning taxation," do not apply in this case, where the tax statute is unambiguous. *Lenox, Inc. v. Tolson*, 353 N.C. 659, 664, 548 S.E.2d 513, 517 (2001).

DOR also contends that "[b]ecause [DOR] is charged with the duty to interpret the Revenue Laws of the State, its interpretation of N.C. Gen. Stat. § 105-164.13(23)b is *prima facie* correct." "While it is true one of the most significant aids to construction in determining the meaning of a revenue law is the interpretation given such act by the administrative agency charged with its enforcement, . . . . [i]t is only in cases of doubt or ambiguity that the courts may allow themselves to be guided or influenced by an executive construction of a statute." *Watson Industries*, 235 N.C. at 211, 69 S.E.2d at 511 (internal citations and quotation marks omitted); *accord In re Total Care, Inc.*, 99 N.C. App. 517, 520, 393 S.E.2d 338, 340 ("Although where an issue of statutory construction arises the construction adopted by the agency charged with implementing the statute may be considered, such an issue only arises where an ambiguity exists."), *disc. review denied*, 327 N.C. 635, 399 S.E.2d 122 (1990). Where, as here, the statutory language at issue is not ambiguous, it is the statute's plain language, not an agency's interpretation of it, that controls. *See N.C. Dep't of Corr.*, 363 N.C. at 202-03, 675 S.E.2d at 650 (concluding agency's "interpretation of the statute at issue is irrelevant" where legislative intent can be "derived from the plain language of the statute"). We, therefore, conclude that Parkdale's Yarn Paks qualify for the tax exemption under N.C. Gen. Stat. § 105-164.13(23)(b) and affirm the trial court's entry of summary judgment to Parkdale.

Affirmed.

Chief Judge MARTIN and Judge BRYANT concur.