Home Depot U.S.A., Inc. v. N.C. Dep't of Revenue, 2015 NCBC 100.

STATE OF NORTH CAROLINA

COUNTY OF WAKE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
11 CVS 2261

HOME DEPOT U.S.A., INC.,

         Petitioner,

    v.

NORTH CAROLINA DEPARTMENT
OF REVENUE,

         Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

**ORDER ON PETITION FOR REVIEW
OF FINAL DECISION**

{1}     THIS MATTER is before the Court on the Petition for Judicial Review ("Petition") of a Final Agency Decision in a contested tax case arising under a section of the North Carolina Sales and Use Tax Act ("the Act") known as the "bad-debt refund statute." N.C. Gen. Stat. § 105-164.13(15) (2013). For the reasons discussed below, the Court AFFIRMS the Final Agency Decision of the North Carolina Department of Revenue, and the Petition is DISMISSED.

> *Alston & Bird, LLP by Ryan P. Ethridge, and Gibson, Dunn & Crutcher, LLP by John D. W. Partridge, Randy M. Mastro, and Jennifer H. Rearden for Petitioner Home Depot U.S.A., Inc.*
>
> *North Carolina Department of Justice by Tenisha S. Jacobs for Respondent North Carolina Department of Revenue.*

Gale, Chief Judge.

## I.    NATURE OF THE DISPUTE

{2}     This matter involves a dispute between Petitioner Home Depot U.S.A., Inc. ("Home Depot") and Respondent North Carolina Department of Revenue ("Department") in which Home Depot seeks tax refunds for bad-debt deductions arising under its private-label credit card ("PLCC") program. Home Depot seeks a refund of sales tax in the form of a bad-debt deduction for three tax periods.

{3} North Carolina's bad-debt refund statute provides that "accounts of purchasers, representing taxable sales, on which the tax imposed by this Article has been paid, that are found to be worthless and actually charged off for income tax purposes may, at corresponding periods, be deducted from gross sales." *Id.* Home Depot claims that its PLCC accounts meet the criteria for a bad-debt deduction under section 105-164.13(15). The Department disagrees that Home Depot is entitled to a bad-debt deduction because the third-party banks, not Home Depot, maintain the PLCC accounts and charge off the debts on their income-tax returns.

{4} Home Depot acknowledges that under the PLCC program, third-party banks maintained credit accounts with customers who used PLCCs to make purchases from Home Depot. The company further acknowledges that the third-party banks reimbursed Home Depot for the purchase price and the associated sales tax in PLCC transactions, but retained a service fee. Home Depot treats the service fees as an ordinary business expense on its tax returns but contends that the fees fully allocate the financial responsibility for the consumers' nonpayment to Home Depot, thus entitling Home Depot to the benefit of the deduction. Home Depot contends that the bad-debt refund statute, as the Department applies it, unconstitutionally discriminates between retailers that provide direct customer credit and retailers that contract with third-party banks to offer customer credit through PLCC accounts.

## II.   PROCEDURAL HISTORY

{5} On February 21, 2006, the Department issued a Notice of Sales and Use Tax Assessment to Home Depot for the period of December 1, 2000, through November 30, 2003, in the amount of $2,608,945.64. Home Depot requested a redetermination of various portions of the tax amount in letters dated February 28, 2006, and March 1, 2006. (R. at 198–99, 200–05.)[1]

---

[1] While the procedural background of the Final Agency Decision states that Home Depot mailed letters on these two days, the Official Record mentions only one letter, dated February 26, 2006 (though letters dated February 28, 2006, and March 1, 2006, are included as exhibits in the Record).

{6} On March 1, 2006, Home Depot remitted a check in the amount of $740,184.81 for full payment of all undisputed portions of the Department's audit. (R. at 15.)

{7} Home Depot requested refunds on the basis that it was entitled to bad-debt deductions of $156,756.33 for the period of August 1, 2003, through January 31, 2004, and $1,804,664.90 for the period of January 1, 2004, through January 31, 2007. (R. at 15.) The Department denied Home Depot's refund requests, and Home Depot requested further review by the Department.

{8} On May 15, 2009, the Department issued a Notice of Final Determination, which stated that the refund requests in connection with Home Depot's bad-debt-deduction claim had been properly denied. (R. at 26–28.)

{9} On July 14, 2009, Home Depot filed a petition for a contested case hearing before the Office of Administrative Hearings. (R. at 13.)

{10} After a discovery period, both Home Depot and the Department moved for summary judgment. Following a hearing, Administrative Law Judge Melissa Owens Lassiter granted summary judgment for the Department on August 12, 2010. *Home Depot U.S.A., Inc.*, OAH No. 09 REV 4211 (N.C. Dep't of Revenue Aug. 12, 2010). Home Depot appealed.

{11} On January 13, 2011, the Department entered its Final Agency Decision, which upheld the ALJ's grant of summary judgment for the Department. *Home Depot U.S.A., Inc.* (*Final Agency Decision*), OAH No. 09 REV 4211 (N.C. Dep't of Revenue Jan. 13, 2011).

{12} Home Depot filed its Petition on February 11, 2011.

{13} The matter was designated as a complex business case on February 14, 2011, and assigned to this Court on March 16, 2011.

{14} Home Depot contended, in part, that it was denied discovery necessary to litigate its equal-protection claims. Ultimately, motion practice on that discovery issue was resolved by the Court's December 31, 2014, Order. The parties then filed

---

Additionally, the Record contains a discrepancy regarding the relevant audit period, stating the beginning date as both December 1, 2000, and December 1, 2001.

their respective briefs, and the Court heard oral argument on the merits of the Petition on June 23, 2015.

## III. STANDARD OF REVIEW

{15}   The standard of review for this matter is established by the version of section 150B-51 of the Administrative Procedure Act that was in effect when the contested proceeding commenced on July 14, 2009.  N.C. Gen. Stat. § 150B-51 (amended 2011).  Under section 150B-51, a trial court may reverse or modify a final agency decision if the agency's findings, inferences, or decision were

(1) In violation of constitutional provisions;
(2) In excess of the statutory authority or jurisdiction of the agency;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
(5) Unsupported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or
(6) Arbitrary, capricious, or an abuse of discretion.

*Id.* § 150B-51(b)(1)–(6).

{16}   In exercising judicial review over a final agency decision, this Court acts in the capacity of an appellate court. *Mann Media, Inc. v. Randolph Cty. Planning Bd.*, 356 N.C. 1, 12, 565 S.E.2d 9, 17 (2002).  The Court's scope of review includes inquiries into whether the evidence supports the agency's findings of fact, whether the findings support the agency's conclusions of law, and whether the conclusions of law are proper statements and applications of the law.  *ACT-UP Triangle v. Comm'n for Health Servs.*, 345 N.C. 699, 706, 483 S.E.2d 388, 392 (1997).

{17}   Issues of law receive *de novo* review, which requires the Court to "consider[] the matter anew[] and freely substitute[] its own judgment for the agency's." *N.C. Dep't of Env't & Nat. Res. v. Carroll*, 358 N.C. 649, 659, 599 S.E.2d 888, 894 (2004) (second alteration in original) (quoting *Mann Media*, 356 N.C. at 13, 565 S.E.2d at 17).  Challenges to the agency's fact findings are reviewed under the whole-record test, which binds the Court to accept fact findings of the

administrative agency that are supported by substantial evidence, in view of the entire record. *Id.* at 663, 599 S.E.2d at 897. "Any finding of fact not specifically rejected [by the agency] . . . shall be deemed accepted for purposes of judicial review of the final decision." N.C. Gen. Stat. § 150B-36(b1) (repealed 2011).

{18} Home Depot asserts four primary arguments: (1) that the Department improperly applied the controlling statutory language of the bad-debt refund statute, (2) that the Department's statutory construction is inconsistent with the statute's purpose, (3) that Home Depot and the third-party banks satisfied the statutory requirements for a bad-debt deduction by operating as a "unit," and (4) that the Department's position violates Home Depot's constitutional guarantees of equal protection and due process. Each of these arguments raises legal issues that the Court addresses *de novo*.

{19} Home Depot also challenges the following statement in the Final Agency Decision, which was labeled as a conclusion of law: "Petitioner's contention that the service fees are evidence that it bore the risk of loss on uncollectible PLCC accounts is without merit." *Final Agency Decision*, OAH No. 09 REV 4211, at 7 (Conclusions of Law ¶ 21). The Court believes that this statement presents a mixed finding of law and fact. Accordingly, the Court employs the whole-record test to review the factual determination that the service fees did not evidence Home Depot's bearing the risk of loss for bad debts.

## IV. FACTUAL BACKGROUND

{20} The Court finds that there is substantial record evidence to support the following findings of fact from the Final Agency Decision:

1. Petitioner Home Depot is a Delaware corporation with corporate headquarters in Atlanta, Georgia. Petitioner operates retail home improvement centers throughout the United States, including North Carolina.

2. During January 1, 2000 through . . . January 31, 2007 ("period at issue"), Petitioner offered its customers the option of using private label credit cards ("PLCC") to purchase merchandise. Petitioner did

not extend financing of its own to its customers, but relied on third-party credit card banks to finance and manage its PLCC program.

3. Petitioner's PLCC bears Petitioner's colors and logo, and was exclusively used to purchase items at Petitioner's business.

4. By contracting with third-party credit card banks to administer its PLCC program, Petitioner avoided being subject to various federal and state regulations regarding PLCCs.

5. Petitioner entered into agreements with the following third-party banks to finance and manage its PLCC program: Monogram Credit Card Bank of Georgia, General Electric Capital Financial, Inc., General Electric Capital Corporation (collectively "GE Affiliates") and Citibank USA, N.A. ("Citi").

6. From August 1997 through approximately July 27, 2003, the GE Affiliates financed and managed Petitioner's PLCC program. Thereafter, Citi financed and managed Petitioner's PLCC program.

7. Pursuant to the various agreements between Petitioner and the third-party banks, the third-party banks agreed to: (a) open a PLCC account, (b) issue a PLCC, (c) activate the customer's PLCC in accordance with certain operating procedures and (d) grant credit to the customers for their purchases at Petitioner for each applicant who qualified for credit under Petitioner's PLCC program.

8. Petitioner agreed to honor any valid PLCC issued by the third-party banks for purchases, including taxes.

9. Petitioner also agreed to: (1) display PLCC applications and agreements at its retail locations, and (2) use reasonable efforts to promote the PLCC program to its customers.

10. The third-party banks supplied the PLCC applications and agreements to Petitioner.

11. Under the various agreements between Petitioner and the third-party banks, the PLCC applications and agreements had to disclose clearly that the third-party bank was the owner and creditor on all PLCC accounts. No materials generated or displayed by Petitioner were to state or imply otherwise.

12. When determining whether to extend credit to an applicant, the third-party banks, in their sole discretion, determined the following: (a) the creditworthiness of the individual applicants under the PLCC program, (b) the range of credit limits made to individual cardholders, (c) whether to suspend or terminate credit

of any cardholder, and (d) the credit criteria to be used in evaluating applicants in connection with the PLCC program.

13. The third-party banks were the sole and exclusive owners of all PLCC accounts.

14. Under the various agreements between Petitioner and the third-party banks, Petitioner acknowledged and agreed that it had no right, title, or interest in the PLCC accounts, and no rights to any payments made by cardholders on, or any proceeds from, such accounts.

15. For each sale made to a customer using a PLCC, Petitioner seeks reimbursement from the third-party bank for the customer's PLCC transaction. Petitioner did not record an account receivable from the customer.

16. To receive payment on the PLCC accounts, Petitioner, at the end of each day, transmitted that day's PLCC sales information to the third-party banks, including any applicable sales tax.

17. Upon receipt and verification of the PLCC sales information, the third-party bank paid Petitioner for the difference between the purchase price for each PLCC transaction, including the requisite sales tax, and any applicable service fee, which applied without regard to whether the customer ultimately defaulted.

18. Under the various agreements between the Petitioner and the third-party banks, the third-party bank, in its sole discretion, may deduct from the remittance or invoice, amounts due from Petitioner to the third-party bank.

19. Amounts due from Petitioner to the third-party banks include chargebacks,[2] costs of printing, customization and other incidental costs associated with the third-party banks' preparation of PLCC applications, PLCC agreements and other similar types of documents, and a "service" or "merchant" fee.

20. The "service fee" was a percentage amount that varied depending on the account type, and was applicable to each purchase amount charged to a cardholder's PLCC account.

21. Petitioner deducted the "service fees" as a business expense on Line 26, entitled "Other Deductions," of its federal income tax returns.

---

[2] The chargeback procedures allowed the third-party banks to charge back to the retailer the amount evidenced by any charge slip. A chargeback is a return of funds to the consumer when there is a dispute over the charge on the consumer's account. (R. at 2709, 2710.)

22. The third-party banks wrote off the receivables related to the PLCC accounts, after the receivables became uncollectible.

23. The third-party banks claimed a bad debt deduction for the uncollectible receivables related to the PLCC accounts on Line 15, entitled "Bad Debt," of their federal income tax returns.

*Id.* at 3–5 (Findings of Fact ¶¶ 1–23). These findings of fact are largely undisputed. The Court holds that the findings of fact are supported by substantial evidence, in view of the entire record, and therefore are binding on this Court. *Carroll*, 358 N.C. at 663, 599 S.E.2d at 897.

{21}   The Court concludes that these findings of fact, together with the entire record, support the Department's finding that Home Depot did not bear the risk of loss on uncollectible PLCC Accounts. *Final Agency Decision*, OAH No. 09 REV 4211, at 7 (Conclusions of Law ¶ 21). Although Home Depot points to evidence that the service fees were specifically negotiated, and that projected losses from bad debts were factored into these negotiations, there were other components to the negotiations. It is clear that for individual accounts, individual losses were not charged back to Home Depot.

## V.   ANALYSIS

### A. The Department Properly Construed the Bad-Debt Refund Statute when It Denied Home Depot's Bad-Debt Deduction

#### 1. The Statutory Scheme for Payment of Sales Taxes

{22}   In North Carolina, sales tax is imposed as a "privilege tax" on retailers for their right to conduct business in the state. N.C. Gen. Stat. § 105-164.4(a) (amended 2009). Retailers, acting as trustees for the State, collect sales tax from purchasers, and the sales tax is "intended to be passed on to the purchaser of a taxable item and borne by the purchaser instead of by the retailer." *Id.* § 105-164.7. If the retailer fails to collect the sales tax from the purchaser, however, the retailer is still liable for the sales tax. *Long Mfg. Co. v. Johnson*, 264 N.C. 12, 16, 140 S.E.2d 744, 747 (1965).

{23} Under section 105-164.4(a), the amount of sales tax is levied on a retailer's net taxable sales or gross receipts. "Net taxable sales" are defined under section 105-164.3(24) as "[t]he gross sales of the business of a retailer taxed under this Article after deducting exempt sales and nontaxable sales." N.C. Gen. Stat. § 105-164.3(24) (amended 2009).

{24} The bad-debt refund statute allows the retailer to calculate net taxable sales by deducting from gross sales the "[a]ccounts of purchasers, representing taxable sales, on which the tax imposed by this Article has been paid, that are found to be worthless and actually charged off for income tax purposes." *Id.* § 105-164.13(15) (2013).

{25} Home Depot bears the burden of proving that it is eligible for a deduction from its net taxable sales under the bad-debt refund statute. *See Wal-Mart Stores E., Inc. v. Hinton*, 197 N.C. App. 30, 54–55, 676 S.E.2d 634, 651 (2009) ("A taxpayer claiming a deduction must bring himself within the statutory provisions authorizing the deduction." (quoting *Ward v. Clayton*, 5 N.C. App. 53, 58, 167 S.E.2d 808, 811 (1969), *aff'd*, 276 N.C. 411, 172 S.E.2d 531 (1970))).

{26} A retailer qualifies for bad-debt deductions on accounts that meet the following criteria: (1) the accounts are "accounts of purchasers," (2) the accounts "represent[] taxable sales[] on which the tax imposed has been paid," and (3) the accounts "are found to be worthless and actually charged off for income tax purposes." N.C. Gen. Stat. § 105-164.13(15).

## 2. Rules of Construction

{27} Questions involving statutory interpretation are reviewed as issues of law. *Parkdale Am., LLC v. Hinton*, 200 N.C. App. 275, 278, 684 S.E.2d 458, 461 (2009). The primary purpose of statutory interpretation is to give effect to the intent of the legislature. *Lunsford v. Mills*, 367 N.C. 618, 623, 766 S.E.2d 297, 301 (2014). "When the language of a statute is clear and unambiguous, there is no room for judicial construction, and the courts must give it its plain and definite meaning." *State v. Jones*, 358 N.C. 473, 477, 598 S.E.2d 125, 128 (2004) (quoting *Lemons v.*

*Old Hickory Council, Boy Scouts of Am., Inc.*, 322 N.C. 271, 276, 367 S.E.2d 655, 658 (1988)).  "Where words of a statute are not defined, the courts presume that the legislature intended to give them their ordinary meaning determined according to the context in which those words are ordinarily used."  *Parkdale Am.*, 200 N.C. App. at 279, 684 S.E.2d at 461 (quoting *Reg'l Acceptance Corp. v. Powers*, 327 N.C. 274, 278, 394 S.E.2d 147, 149 (1990)).  Where "there is no 'contextual definition, courts may look to dictionaries to determine the ordinary meaning of words within a statute.'"  *Id.* (quoting *Perkins v. Ark. Trucking Servs., Inc.*, 351 N.C. 634, 638, 528 S.E.2d 902, 904 (2000)).  Further, "the interpretation of a statute given by the agency charged with carrying it out is entitled to great weight."  *Good Hope Hosp., Inc. v. N.C. Dep't of Health & Human Servs.*, 175 N.C. App. 309, 312, 623 S.E.2d 315, 318 (2006) (quoting *Frye Reg'l Med. Ctr. v. Hunt*, 350 N.C. 39, 45, 510 S.E.2d 159, 163 (1999)).

### 3. The Department Has Not Improperly Grafted Requirements onto the Statute

{28}    Home Depot argues that it has satisfied the plain, unambiguous language of section 105-164.13.  Specifically, Home Depot argues that it is entitled to a bad-debt deduction under the statute because (1) the PLCC transactions were retail sales on which Home Depot paid the sales tax, thereby constituting "taxable sales, on which the tax imposed . . . has been paid," (2) the third-party banks maintained "accounts of purchasers," and (3) those accounts were "found to be worthless and actually charged off for income tax purposes" by the third-party banks.  N.C. Gen. Stat. § 105-164.13(15).  More specifically, Home Depot contends that the bad-debt refund statute does not require Home Depot to maintain its own in-house credit accounts or to charge off the bad debts for its own income-tax returns.

{29}    Home Depot asserts that the Department's position—that Home Depot must actually maintain the accounts and take the income-tax deduction—improperly construes the statute beyond its terms.  To interpret the statute, the

Court must further examine terms that have been defined by other statutory sections within the Act. *See Atl. Cleaners & Dyers, Inc. v. United States*, 286 U.S. 427, 433 (1932) ("[T]here is a natural presumption that identical words used in different parts of the same act are intended to have the same meaning.").

{30} First, the Act refers to "net taxable sales," which are defined as "[t]he gross sales of the business *of a retailer* taxed under this Article after deducting exempt sales and nontaxable sales." N.C. Gen. Stat. § 105-164.3(24) (amended 2009) (emphasis added). The Act further defines "gross sales" as "[t]he sum total of the sales price of all retail sales of tangible personal property, digital property, and services." *Id.* § 105-164.3(12). These sections make clear that "taxable sales" means sales by a retailer. It is also clear that Home Depot seeks to adjust its own sales when calculating its sales-tax obligation.

{31} The Department concluded that that the bad-debt refund statute, which applies to "accounts of purchasers," "applies to those accounts between the retailer and customer" and "not . . . to accounts held by a third party." *Final Agency Decision*, OAH No. 09 REV 4211, at 6 (Conclusions of Law ¶ 16). While the statutory language is not abundantly clear, the Court finds that the Department's interpretation is reasonable and harmonious with other language in the Act.

{32} The Court concludes that the Department appropriately construed the bad-debt refund statute to require the party claiming the bad-debt deduction to be the holder of a purchaser account for the sale that generates the debt.

{33} Second, the Court considers whether the party claiming the bad-debt deduction must be the same party that charged off the bad debt for income-tax purposes. Leaving aside Home Depot's "unit" argument, discussed below, the Court concludes that the statute requires that the party claiming the bad-debt deduction must have also charged off those debts on its income-tax returns.[3]

---

[3] The Court is aware that in another lawsuit, Superior Court Judge Donald Stephens determined that the third-party PLCC issuer lacks standing to claim a bad-debt deduction because the PLCC issuer is "not the taxpayer and did not pay the tax." *Citibank (S.D.), N.A. v. Hinton*, No. 08-CVS-12601 (N.C. Super. Ct. Oct. 17, 2008) (attached as Exhibit 2 to Home Depot's Petition for Judicial

4. **The Department's Construction Does Not Conflict with Legislative Intent**

{34}   Home Depot correctly points out that the intent of the Act is for sales tax to "be borne and passed on to the customer, instead of being borne by the retailer." N.C. Gen. Stat. § 105-164.7. The Court does not believe that the legislative purpose—that sales tax be borne and passed to the customer— necessarily leads to the conclusion that no sales tax will be paid if the customer fails to pay the tax. In fact, section 105-164.7 also makes clear that a "retailer's failure to charge the tax or to collect the tax from the purchaser does not affect" its sales-tax liability. *Id.*

{35}   At best, the Court believes that Home Depot has demonstrated the existence of potentially conflicting legislative policies. As this Court has stated, "there are unique canons of statutory construction that apply when interpreting taxation statutes." *Bodford v. N.C. Dep't of Revenue*, 2013 NCBC LEXIS 18, at *12 (N.C. Super. Ct. Apr. 10, 2013). One of those canons is that "[d]eductions . . . are in the nature of exemptions: they are privileges, not rights, and are allowed as a matter of legislative grace." *Aronov v. Sec'y of Revenue*, 323 N.C. 132, 140, 371 S.E.2d 468, 472 (1988). As a result, "ambiguities . . . are resolved in favor of taxation." *Id.*

{36}   Home Depot has not demonstrated a legislative intent that compels the Court to hold that Home Depot falls within the scope of the bad-debt refund statute.

5. **Home Depot Has Not Demonstrated that It Acted as a "Unit" with the Third-Party Banks**

{37}   Next, Home Depot argues that if this Court finds that Home Depot must own the "accounts of purchasers" to qualify for a bad-debt deduction, Home Depot has satisfied this requirement by acting as a single taxpaying "unit" with the

Review). The Court has not been asked to comment on that ruling, and the Court understands that Judge Stephens's order was not appealed.

third-party banks. This argument is based on language that was included in the statute when this lawsuit commenced, which defined "taxpayer" as "[a]ny person liable for taxes under [the Act]." N.C. Gen. Stat. § 105-164.3(47) (amended 2009). "Person" was defined as "[a]n individual, a fiduciary, a firm, an association, a partnership, a limited liability company, a unit of government, *or another group acting as a unit.*" *Id.* § 105-228.90(b)(5) (emphasis added).

{38} When analyzing this argument, the Court is mindful of a canon of statutory construction known as *ejusdem generis*, which provides that where general words follow an enumeration of two or more things, they apply only to persons or things of the same general kind or class specifically mentioned. *See Wake County v. Hotels.com, L.P.*, ___ N.C. App. ___, 762 S.E.2d 477, 484 (2014) (applying the *ejusdem generis* canon to a state sales-tax statute). The canon prevents an interpretation that "will lead to absurd results." *Frye Reg'l Med. Ctr., Inc.*, 350 N.C. at 45, 510 S.E.2d at 163 (quoting *Mazda Motors of Am., Inc. v. Sw. Motors, Inc.*, 296 N.C. 357, 361, 250 S.E.2d 250, 253 (1979)).

{39} Home Depot and the third-party banks had a contractual relationship that involved a certain degree of collaboration, decision making, and agreement. The relationship did not, however, rise to the level of creating a single tax-paying "unit" between Home Depot and the third-party banks. To the contrary, the PLCC agreement with each third-party bank clearly indicates that the bank is the "sole and exclusive owner of all Accounts, Account Documentation, credit information, and receipts or evidences of payment or Purchases by Accountholders." (R. at 2698.) Section 15.11 of the same agreement states that "[n]othing contained in this Agreement shall be construed to constitute Bank and Retailer as partners, joint venturers, principal and agent, or employer and employee." (R. at 2730.) Although Home Depot and the third-party banks made cooperative decisions, the role of each entity in the PLCC program was separate and distinct.

{40} The Court believes that construing the statute to allow such arm's-length business arrangements to qualify Home Depot and the third-party banks as a single taxpaying "unit" would push the statutory language beyond its reasonable

construction. While this Court is not bound by the decisions of appellate courts outside of this state, the Court is aware that other courts have reached a similar conclusion. For example, the Arizona Court of Appeals held that the contractual relationship between Home Depot and financing companies, although requiring communication and coordination on credit standards, did not suffice to establish the existence of a single tax-paying entity. *Home Depot U.S.A., Inc. v. Ariz. Dep't of Revenue*, 287 P.3d 97, 103 (Ariz. Ct. App. 2012); *see also Home Depot U.S.A., Inc. v. Wash. Dep't of Revenue*, 215 P.3d 222, 230 (Wash. Ct. App. 2009) (concluding that Home Depot and a third-party financing company were "two separate companies bound only by a negotiated contract").

{41} In sum, Home Depot has not demonstrated that it falls within the purview of the bad-debt refund statute by acting as a "unit" with the third-party banks.

## B. Home Depot Has Not Been Denied Equal Protection or Due Process

{42} Home Depot argues that the Department's interpretation of the bad-debt refund statute violates the Equal Protection and Due Process Clauses of the United States and North Carolina Constitutions by creating an irrational distinction between retailers who finance their own customer sales and retailers who offer PLCC accounts using third-party banks. The Court disagrees.

{43} State-tax provisions violate the Equal Protection Clause when there is no rational basis for the tax classification. *See Williams v. Vermont*, 472 U.S. 14, 22–24 (1985). If a tax classification "is neither capricious nor arbitrary, and rests upon some reasonable consideration of difference or policy, there is no denial of the equal protection of the law." *Deadwood, Inc. v. N.C. Dep't of Revenue*, 356 N.C. 407, 413, 572 S.E.2d 103, 107 (2002) (quoting *Clark v. Maxwell*, 197 N.C. 604, 608, 150 S.E. 190, 193 (1929), *aff'd per curiam*, 282 U.S. 811 (1931)).

{44} Tax classifications can rest on subtle distinctions. *Id.* at 414, 572 S.E.2d at 107–08 (citing numerous cases). Indeed, "[i]t is enough that the classification is reasonably founded in the 'purposes and polic[ies] of taxation.'"

*Rigby v. Clayton*, 274 N.C. 465, 471, 164 S.E.2d 7, 12 (1968) (first alteration in original) (quoting *Watson v. State Comptroller*, 254 U.S. 122, 125 (1920)). The Court concludes that the Department draws a rational distinction between retailers that extend their own credit and maintain customer credit accounts, but are never reimbursed for the sales tax if a customer defaults, and retailers that contract with third-party banks that pay the retailer the sales tax but retain a service fee.

{45} Again, this Court is not bound by, but notes with approval, the reasoning of other state courts that have addressed the same equal-protection argument. *See Home Depot U.S.A., Inc. v. Levin*, 905 N.E.2d 630, 634–35 (Ohio 2009) (noting that Home Depot's equal-protection rights were not implicated because Home Depot was not similarly situated to vendors who own and service their own credit-card programs and assume the risk of bad-debt loss); *see also Ariz. Dep't of Revenue*, 287 P.3d at 104; *Wash. Dep't of Revenue*, 215 P.3d at 230–32; *Home Depot U.S.A., Inc. v. Ind. Dep't of State Revenue*, 891 N.E.2d 187, 191 n.7 (Ind. T.C. 2008).

{46} Home Depot further argues that the Department's deprival of Home Depot's bad-debt deduction violates due process because the State receives a windfall by retaining sales tax from the worthless accounts, and because the statute unconstitutionally treats national retailers differently from local retailers. This argument is similarly unpersuasive.

{47} The denial of a tax refund does not deprive a taxpayer of due process unless the denial is "arbitrary and irrational." *United States v. Carlton*, 512 U.S. 26, 30 (1994) (quoting *Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 733 (1984)). Further, "[t]he guarantee of due process does not require that the state allow a bad-debt deduction as a means of preventing an 'unjust enrichment.'" *Ariz. Dep't of Revenue*, 287 P.3d at 104 (quoting *Levin*, 905 N.E.2d at 634).

{48} Here, there is no evidence that the Department acted arbitrarily or irrationally. Moreover, there is no windfall to the State; sales tax is merely a privilege tax that retailers pay to the State in exchange for a right to do business. Home Depot is liable for the sales tax, regardless of whether it actually collects the

tax. There is no indication that an in-state retailer that utilizes a PLCC program would be treated differently from an out-of-state retailer. This argument is without merit.

## VI.    CONCLUSION

{49}    For the foregoing reasons, the Court AFFIRMS the Final Agency Decision of the North Carolina Department of Revenue and Home Depot's Petition for Judicial Review is DISMISSED.


IT IS SO ORDERED, this the 6th day of November, 2015.


/s/ James L. Gale
_____
James L. Gale
Chief Special Superior Court Judge
  for Complex Business Cases