IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA 15-415

Filed: 5 April 2016

Property Tax Commission Sitting as the State Board of Equalization and Review
No. 12 PTC 005

In the Matter of the Appeal of:

Michelin North America, Inc.

from the decision of the Mecklenburg
County Board of Equalization and
Review concerning the discovery of
certain business personal property
and the proposed discovery values
for tax years 2006-2011.

Appeal by Michelin North America, Inc. from a Final Decision entered 12 December 2014 by Chairman William W. Peaslee in the North Carolina Property Tax Commission. Heard in the Court of Appeals 21 October 2015.

*Nexsen Pruet, PLLC, by Alexander P. Sands, III, Jason C. Pfister, and David S. Pokela, for Appellant-Michelin North America, Inc.*

*Ruff Bond Cobb Wade & Bethune, LLP, by Ronald L. Gibson and Robert S. Adden, Jr., for Appellee-Mecklenburg County.*

HUNTER, JR., Robert N., Judge.

Michelin North America, Inc. ("Michelin") appeals from a Final Decision of the North Carolina Property Tax Commission determining certain airplane tires held in Michelin's Mecklenburg facility are subject to taxation. Michelin contends the tires

are statutorily excluded from taxation as "inventories owned by manufacturers." We agree and therefore reverse the decision of the Property Tax Commission.

## I. Factual and Procedural Background

On 4 November 2011, Michelin appealed the assessed value and penalty of the business's personal property assessed during a property tax audit to the Mecklenburg County Board of Equalization and Review. The audit spanned tax years 2006 through 2011. Michelin contested the valuation of aircraft tires at their facility in Mecklenburg County. Following a hearing, the Mecklenburg County Board of Equalization and Review decided the tires should be valued by using the retail cost of $488.18 per tire.

On 5 January 2012, Michelin appealed the decision to the North Carolina Property Tax Commission. Evidence presented at a hearing before the Property Tax Commission on 14 August 2014 tended to show the following.

Bradley McMillen, the technical director for the aircraft tire division at Michelin testified, describing Michelin's facility in Mecklenburg and the tires in question. Michelin's Mecklenburg facility is primarily a testing facility. Approximately half of the tires tested in the Mecklenburg facility are military tires that must meet military qualifications. The tires at issue fall into three categories, described below.

"Prototype tires," which are in the development phase, make up approximately 55 percent of the tires in the facility. The tires are completely constructed, but are not yet qualified to be put on an aircraft. The FAA must approve commercial tires and the military must approve military tires before an airworthiness certificate will be awarded, allowing the tires to go into production. Every tire that leaves the facility to be sold must have an airworthiness certificate attached to the tire. Prototype tires are either tires that Michelin is developing for new aircraft or tires Michelin is trying to improve. Prototype tires are destroyed during the testing process.

"Conformance production tires" are aircraft tires currently in production and qualified by the FAA or the military. Approximately 30 percent of the tires in the Mecklenburg facility are conformance production tires. These tires are pulled from inventory in Michelin factories, and sent to the Mecklenburg facility for testing. Conformance production tires do not have an airworthiness certificate attached to them because they will be destroyed in the testing process, and therefore cannot be sold.

"Returned goods," comprising approximately 15 percent of the Mecklenburg facility's tires, are used aircraft tires. These tires are used by consumers, and then returned to the facility to evaluate the tires' performance in the field. Damaged tires are returned to determine the cause of the damage. Tires classified as "returned

goods" belong to the consumer. After testing, these tires go through a denaturing process, and are subsequently hauled away for disposal or recycling.

Barry Lindenman, the business personal property audit manager for Mecklenburg County testified at the hearing. He arrived at a valuation of the tires by multiplying their average retail value of $488.18 by the number of tires in the facility, 1,531. Based on Lindenman's calculations, the total value of the tires is $547,116 for each taxable year of the audit.

The Property Tax Commission issued a final decision on 12 December 2014. The Commission held the returned goods should not be taxed because they remain the property of the consumer, but the prototype tires and conformance production tires are subject to taxation. Based on the number of tires falling within those categories, the Commission concluded the total value of the prototype and conformance production tires to be $421,628.08 for each year at issue. Over six taxable years, the total value is $2,529,768.48. Michelin timely filed a Notice of Appeal challenging the Commission's conclusion as it related to the prototype tires and conformance production tires.

## II. Jurisdiction

Jurisdiction lies in this Court pursuant to N.C. Gen. Stat. § 7A-29(a) which provides for an appeal as of right from any final order or decision of the Property Tax Commission. N.C. Gen. Stat. § 7A-29(a) (2015).

### III. Standard of Review

This Court reviews appeals from the Property Tax Commission pursuant to

N.C. Gen. Stat. § 105-345.2(b):

> So far as necessary to the decision and where presented, the court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning and applicability of the terms of any Commission action. The court may affirm or reverse the decision of the Commission, declare the same null and void, or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the appellants have been prejudiced because the Commission's findings, inferences, conclusions or decisions are:
>
> (1) In violation of constitutional provisions; or
>
> (2) In excess of statutory authority or jurisdiction of the Commission; or
>
> (3) Made upon unlawful proceedings; or
>
> (4) Affected by other errors of law; or
>
> (5) Unsupported by competent, material and substantial evidence in view of the entire record as submitted; or
>
> (6) Arbitrary or capricious.

N.C. Gen. Stat. § 105-345.2(b) (2015).

We review Property Tax Commission decisions under the whole record test to

determine whether a decision has a rational basis in the evidence or whether it was

arbitrary or capricious. *In re McElwee*, 304 N.C. 68, 87, 283 S.E.2d 115, 127 (1981).

"The "whole record" test does not allow the reviewing court to replace the [Commission's] judgment as between two reasonably conflicting views, even though the court could justifiably have reached a different result had the matter been before it *de novo*." *In re Parkdale America*, 212 N.C. App. at 194, 710 S.E.2d at 450–451 (quoting *In re McElwee*, 304 N.C. at 87–88, 283 S.E.2d at 127). If the Commission's decision, considered in light of the foregoing rules, is supported by substantial evidence, it cannot be overturned. *In re Philip Morris U.S.A.*, 130 N.C. App. 529, 533, 503 S.E.2d 679, 682 (1998).

## IV. Analysis

Generally, all real and personal property is subject to taxation under The Revenue Act unless it is excluded from the tax base by statute or the North Carolina Constitution. N.C. Gen. Stat. § 105-274(a) (2015). A party claiming a statutory exemption bears the burden "of bringing [it]self within the exemption or exception." *Parkdale America, LLC v. Hinton*, 200 N.C. App. 275, 278, 684 S.E.2d 458, 461 (2009).

"Inventories owned by manufacturers" is one such category statutorily excluded from the tax base. N.C. Gen. Stat. § 105-275(33) (2015). "Inventory" and "manufacturer" are terms of art defined by statute. Inventory includes five different statutory definitions. At issue in this case is the third definition of inventory:

> As to manufacturers, raw materials, goods in process, finished goods, or other materials or supplies that are consumed in manufacturing or processing or that accompany and become a part of the sale of the property

being sold.  The term does not include fuel used in manufacturing or processing and materials or supplies not used directly in manufacturing or processing.

N.C. Gen. Stat. § 105-273(8a)(c) (2015).  The meaning of "finished goods" within the definition of inventory is not currently defined by statute.[1]  A manufacturer is a taxpayer "regularly engaged in the mechanical or chemical conversion or transformation of materials or substances into new products for sale or in the growth, breeding, raising, or other production of new products for sale."  N.C. Gen. Stat. § 105-273(10b) (2015).

Here, Michelin's status as a manufacturer is not challenged on appeal.  Because findings of fact not challenged on appeal are binding on this Court, we accept Michelin's status as a manufacturer.  *See Ferreyra v. Cumberland County*, 175 N.C. App. 581, 582, 623 S.E.2d 825, 826 (2006).

During oral arguments on 21 October 2015, Michelin argued the tires used for testing are finished goods under the statutory definition of inventory because the tires have completed the manufacturing process.  The tires are thus "finished" or completed goods before they are then used for testing.  In response, Mecklenburg County conceded the tires in question are "finished goods."

---

[1] In 1985, the legislature defined "finished goods" as "articles of tangible personal property that are ready for sale."  N.C. Sess. Laws 1985-656.  However, the legislature repealed the definition in 1991.  N.C. Sess. Laws 1991-45.

Mecklenburg County contends the statutory phrase "consumed in manufacturing or processing or that accompany and become a part of the sale of the property being sold" refers to raw materials, goods in process, finished goods, or other materials or supplies. In other words, to fall within the statute, finished goods would need to be "consumed in manufacturing or processing or . . . accompany and become a part of the sale of the property being sold." To support its argument, Mecklenburg County argues that when interpreting a statute, "the legislature is presumed to have intended a purpose for each sentence and word in a particular statute, and a statute is not to be construed in a way which makes any portion of it ineffective or redundant." *Peace River Electric Cooperative v. Ward Transformer Co.*, 116 N.C. App. 493, 502, 449 S.E.2d 202, 209 (1994).

In order to determine whether Mecklenburg County's interpretation is correct, we must interpret the statutory definition of inventory.

> Where the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must construe the statute using its plain meaning. But where a statute is ambiguous, judicial construction must be used to ascertain the legislative will. The primary rule of construction of a statute is to ascertain the intent of the legislature and to carry out such intention to the fullest extent. This intent must be found from the language of the act, its legislative history and the circumstances surrounding its adoption which throw light upon the evil sought to be remedied.

*Burgess v. Your House of Raleigh, Inc.*, 326 N.C. 205, 209, 388 S.E.2d 134, 136–137 (1990) (internal citations and quotations omitted).

In 1985, the General Assembly amended The Revenue Act with House Bill 222, entitled An Act to Provide Broad-Based Tax Relief to North Carolina Citizens. N.C. Sess. Law 1985-656. In this bill, the legislature defined inventory as

> goods held for sale in the regular course of business, raw materials, goods in process of manufacture or processing, and other goods and materials that are used or consumed in the manufacture or processing of tangible personal property for sale or that accompany and become a part of the property as sold. The term does not include fuel used in manufacturing or processing.

N.C. Sess. Laws 1985-656. At this time, the definition of inventory did not include the term "finished goods."

The same year, the General Assembly enacted "clarifying" legislation amending The Revenue Act. N.C. Sess. Laws 1985-947. This bill amended the definition of inventory to include the term finished goods for the first time.

> 'Inventories' means goods held for sale in the regular course of business by manufacturers and retail and wholesale merchants. As to manufacturers, the term includes raw materials, goods in process, and finished goods, *as well as* other materials or supplies that are consumed in manufacturing or processing, or that accompany and become a part of the sale of the property being sold. . . .

N.C. Sess. Laws 1985-947 (emphasis added). The language "as well as" shows the legislature meant to include "other materials or supplies that are consumed in

manufacturing or processing" in addition to raw materials, goods in process, and finished goods within the definition of inventory. Accordingly, consumed in manufacturing or processing modifies only "materials or supplies" and not "finished goods."

On 16 July 1987, the General Assembly ratified House Bill 1155, including for the first time the tax exemption for "inventories owned by manufacturers." N.C. Sess. Laws 1987-622. In August 1987, the legislature amended the definition of inventories again, expanding it to include agricultural products by adding a sentence to the definition. N.C. Sess. Laws 1987-813. The language quoted above from the 1985 legislation remained unchanged. *Id.* Thus, after the legislature added an exemption for "inventories owned by manufacturers," it then expanded the definition of inventory. The legislature also retained the "as well as" language, separating "finished goods" from materials or supplies consumed in manufacturing.

In 1991, the General Assembly considered the definition of inventory again, making changes to other parts of the definition, but leaving intact the sentence at issue in this appeal: "As to manufacturers, the term includes raw materials, goods in process, and finished goods, *as well as* other materials or supplies that are consumed in manufacturing or processing, or that accompany and become a part of the sale of the property being sold." N.C. Sess. Laws 1991-975 (emphasis added).

The legislature reconsidered the definition of "inventory" again in 2008, bringing the statutory definition to its current version. At this time, the legislature broke down the definition into five subsections, including subsection c, relating to manufacturers which includes the sentence at issue here:

> As to manufacturers, ~~the term includes raw~~ raw materials, goods in process, ~~and~~ finished goods, ~~as well as~~ or other materials or supplies that are consumed in manufacturing or ~~processing~~, processing or that accompany and become a part of the sale of the property being sold.

N.C. Sess. Laws 2008-35 (showing changes from 1991 definition). The changes do not evidence an intent to change the meaning of the definition of inventory. Instead, the changes show the legislature intended to clean-up the definition by breaking down one large definition into five subsections for ease of use. The change of "as well as" to "or" reflects the deletion of the phrase "the term includes," changing a conjunctive list to a disjunctive list while retaining the same meaning. Still, the statute is a list. Now joined by "or," the bill shows no evidence the legislature acted to change "other materials or supplies consumed in manufacturing or processing" into a clause modifying finished goods. Instead, the legislature continued to include it as part of the list.

As a result, "finished goods" is not modified by materials or supplies consumed in manufacturing. Because the parties agree both the prototype tires and conformance production tires are finished goods within the meaning of the statute,

the tires fall within the statutory definition of inventory. The parties also agree Michelin is a manufacturer under the applicable statute. Thus, the tires are "inventories owned by manufacturers" under N.C. Gen. Stat. § 105-275(33), and are excluded from taxation in North Carolina.

## V. Conclusion

For the foregoing reasons, the Final Decision of the North Carolina Property Tax Commission is reversed. The airplane tires at issue are excluded from taxation as inventory owned by a manufacturer pursuant to N.C. Gen. Stat. § 105-273(33).

REVERSED.

Judges GEER and DILLON concur.