R.R. Friction Prods. Corp. v. N.C. Dep't of Revenue, 2019 NCBC 12.

STATE OF NORTH CAROLINA

COUNTY OF WAKE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
18 CVS 3868

RAILROAD FRICTION PRODUCTS
CORPORATION,

Petitioner,

v.

NORTH CAROLINA DEPARTMENT
OF REVENUE,

Respondent.

**ORDER ON PETITION FOR
JUDICIAL REVIEW**

THIS MATTER is before the Court on Petitioner Railroad Friction Products Corporation's Petition for Judicial Review ("Petition for Judicial Review") (ECF No. 3.)   Petitioner seeks review of the Final Decision-Summary Judgment ("Final Decision") and the Order Denying Petitioner's Motion for Reconsideration of Affiliated Indebtedness[1] ("Order Denying Reconsideration") in a contested tax case before the Office of Administrative Hearings  ("OAH") pursuant to N.C. Gen. Stat. § 150B-43 (hereinafter, references to the General Statutes will be to "G.S.").   On November 29, 2018, the Court held a hearing on the Petition for Judicial Review.

> *Parker Poe by Kay Miller Hobart, Esq. for Petitioner Railroad Friction Products Corporation.*
>
> *North Carolina Department of Justice by Perry J. Pelaez, Esq. for Respondent North Carolina Department of Revenue.*

McGuire, Judge.

---

[1] Although Railroad Friction claims to seek review of the Order Denying Reconsideration in its Petition for Judicial Review, it made no argument in support of review of that order in its briefs or at the hearing.  Accordingly, to the extent the Petition for Judicial Review seeks to challenge the Order Denying Reconsideration, it is DENIED.

## I.    INTRODUCTION

### A. *The Dispute and Issues to be Decided*

1.      This matter arises out of a dispute between Petitioner Railroad Friction Products Corporation ("Railroad Friction") and Respondent North Carolina Department of Revenue (the "Department") regarding Railroad Friction's claims for refunds of North Carolina corporate income and franchise taxes for tax years 2011, 2012, and 2013.  On October 15, 2015, Railroad Friction filed amended tax returns for the 2011, 2012, and 2013 tax years (hereinafter individually referred to as the "2011 Amended Return", "2012 Amended Return", and "2013 Amended Return", and collectively as the "Amended Returns") requesting refunds of alleged overpayments of taxes based on Railroad Friction's reclassification of its business from brake manufacturer to "public utility," and its claim that it was entitled to use single-factor apportionment to determine its North Carolina income and franchise taxes.  Railroad Friction also later claimed to be entitled to a refund of its franchise tax payments for the 2011, 2012, and 2013 tax years based on a recalculation of the affiliated indebtedness component of its Capital Stock Base for franchise tax purposes (the "affiliated indebtedness" claim).  The Department denied the refunds, Railroad Friction filed a contested case proceeding, and the OAH subsequently issued a Final Decision upholding the Department's denial of the refunds, and an Order Denying Reconsideration.  Railroad Friction now petitions this Court to reverse the Final Decision and Order Denying Reconsideration, and conclude that Railroad Friction is owed refunds of the taxes it paid for tax years 2011, 2012, and 2013.

2.     The issues to be decided in this action are (a) is Railroad Friction a "public utility" corporation within the meaning of G.S. § 105-130.4(a)(6) and therefore entitled to calculate its North Carolina income and franchise taxes using a single-factor apportionment formula, as opposed to the standard three-factor apportionment formula provided in G.S. § 105-130.4(i), and (b) whether the OAH erred in concluding that Railroad Friction's claim for refund based on adjustments to its calculations of affiliated indebtedness should be dismissed for failure to properly give the Department and OAH notice of the claim.

*B. North Carolina's Corporate Income and Franchise Tax System*

3.     The North Carolina Revenue Act ("Revenue Act"), G.S. § 105-1, *et. seq.*, imposes a State corporate income tax and franchise tax on corporations doing business in North Carolina.  The corporate income tax is levied on the North Carolina net income of a C-corporation.  G.S. § 105-130.3.  The franchise tax, on the other hand, is measured by "the total amount of [a corporation's] issued and outstanding capital stock, surplus, and undivided profits" (collectively "Capital Stock Base").  G.S. § 105-122(b).  "[A] corporation that does business both inside and outside North Carolina must use the allocation and apportionment process delineated in [G.S.] §§ 105-122(c1)(1) and 105-130.4 in order to determine its liability for the payment of North Carolina franchise and income taxes."  *Midrex Techs. v. N.C. Dep't of Revenue*, 369 N.C. 250, 257, 794 S.E.2d 785, 791 (2016).

4.     For most corporations doing business in and outside of North Carolina, their income is apportioned so as to determine what portion of it is subject to North

Carolina taxes using a formula consisting of three factors: property, payroll, and sales ("standard apportionment formula"). G.S. §105-130.4(i). Additionally, their capital stock, surplus, and undivided profits are apportioned using the same formula. G.S. § 105-122(c1)(1). North Carolina, however, has enacted statutes providing special, more favorable, methods of apportionment for corporations in certain industries. One such statute is G.S. § 105-130.4(r), which authorizes single-factor apportionment based exclusively on sales ("single-factor apportionment") for certain corporations, including "public utility" corporations. During the tax years at issue in this matter, the North Carolina Revenue Act defined a "public utility" corporation as:

> any corporation that is subject to control of one or more of the following entities: the North Carolina Utilities Commission, the Federal Communications Commission, the Interstate Commerce Commission, the Federal Energy Regulatory Commission, or the Federal Aviation Agency; and that owns or operates for public use any plant, equipment, property, franchise, or license for the transmission of communications, the transportation of goods or persons, or the production, storage, transmission, sale, delivery or furnishing of electricity, water, steam, oil, oil products, or gas. The term also includes a motor carrier of property whose principal business activity is transporting property by motor vehicle for hire over the public highways of this State.

G.S. § 105-130.4(a)(6) (2012).[2]

---

[2] The language of G.S. § 105-130.4(a)(6) quoted above is the language in the versions of the statute applicable to Railroad Friction's 2011, 2012, and 2013 amended tax returns. The statutory language was amended in 2016 to eliminate "the Interstate Commerce Commission," effective for calendar quarters beginning on or after January 1, 2017. 2015 N.C. SB 803 (2016). Ultimately this section was repealed, effective for taxable years beginning on or after January 1, 2018. 2015 N.C. HB 97 (2015).

5.     Also relevant to Railroad Friction's claims in this matter is the calculation of Capital Stock Base for North Carolina franchise tax purposes. In making this calculation, a corporation must include "all indebtedness owed to a parent . . . corporation as a part of its capital used in its business" ("affiliated indebtedness"). G.S. § 105-122(b)(8). To compute affiliated indebtedness, "a corporation that owes indebtedness to a parent [or] subsidiary . . . and at the same time is owed indebtedness by the same parent [or] subsidiary . . . shall net the payable[s] and receivable[s] . . . ." 17 N.C.A.C. 5B.1110.

*C. Railroad Friction's Refund Theories*

6.     Based on the above, Railroad Friction presents two alternate theories to this Court in support of its argument that it is due a tax refund from the Department for the 2011, 2012, and 2013 tax years. First, Railroad Friction contends that it is a public utility and was permitted to use the single-factor apportionment formula under G.S. §§ 105-130.4(a)(6) and 105-130.4(r) to calculate its State tax liability. (Br. in Supp. of Petition, ECF No. 26, at pp. 13–14.) By applying single-factor apportionment, Railroad Friction claims it is due an aggregate refund of $2,983,003 dollars for the 2011, 2012, and 2013 tax years. (Record on Judicial Review, ECF Nos. 12–16, at p. 1458.)[3]

7.     Alternatively, Railroad Friction contends it is entitled to refunds for the 2011, 2012, and 2013 tax years on its franchise taxes based on a recalculation of the

---

[3] The Record on Judicial Review is contained in the electronic docket at ECF Nos. 12–16. ECF No. 12 contains pages 1–503, ECF No. 13 contains pages 504–665, ECF No. 14 contains pages 666–888, ECF No. 15 contains pages 889–1286, and ECF No. 16 contains pages 1287–1886 of the record. Hereinafter, ECF Nos. 12–16 are referred to as the "Rec.".

affiliated indebtedness component of its Capital Stock Base. (ECF No. 26, at pp. 7–14.) According to Railroad Friction, it failed to net payables and receivables between it and its parent corporation in reporting affiliated indebtedness in its original 2011, 2012, and 2013 tax returns. (*Id.* at pp. 11–13.) Instead, it reported only the payables it owed to its parent corporation. (*Id.*) By properly netting payables and receivables, Railroad Friction argues that it is entitled to refunds for the 2011, 2012, and 2013 tax years in the amount of $101,095; $112,199; and $115,959 respectively. (Rec., at p. 91).

### III.    FACTS AND PROCEDURAL BACKGROUND

8.    Railroad Friction is a Delaware corporation headquartered in Wilmerding, Pennsylvania. (*Id.* at p. 6.) It is a subsidiary of Westinghouse Air Brake Technologies Corporation ("Wabtec"). (*Id.* at p. 42; ECF No. 3, at ¶ 43.) Railroad Friction operates a manufacturing facility in Laurinburg, North Carolina where it produces brake shoes and disc pads for locomotives, freight cars, and mass transit cars. (ECF No. 3, at ¶¶ 20, 21, 23; Rec., at p. 822.) It sells its products to railroads and transit authorities throughout the United States, including in North Carolina. (ECF No. 3, at p. 4 n. 2.) Specifically, Railroad Friction sells its product to Class I railroads, including Union Pacific, CSX Transportation, Amtrak, Norfolk Southern, and New Jersey Transit. (ECF No. 3, at p. 4; Rec., at pp. 1262, 1268). Railroad Friction has not sold its product to individuals. (Rec., at p. 1268). After the brake shoes are sold to railroad companies, the shoes are affixed to a locomotive owned by

a railroad company. (*Id*. at pp. 1262, 1267–68). It is undisputed that Railroad Friction is subject to North Carolina corporate income and franchise taxes.

9. Railroad Friction adheres to manufacturing and safety guidelines established by the Association of American Railroads ("AAR"), with oversight from the Federal Railroad Administration ("FRA"). (*Id*. at pp. 1273–74). Railroad Friction is not subject to any control by the Interstate Commerce Commission ("ICC"), which was abolished by the United States Congress in 1995. (*Id*. at pp. 849–54.) Railroad Friction's products undergo testing at its plant to ensure that the products function for the purposes for which they were designed; that is, to brake (i.e., slow down and stop) a locomotive and hold a load in place. (*Id*. at pp. 1145, 1279). Neither the AAR or FAR regulate Railroad Friction's pricing, market regions, production levels, research and development, or its customers. (*Id*. at pp. 1141–42, 1279–82).

10. On October 15, 2015, Railroad Friction filed the Amended Returns with the Department. (Rec., at pp. 1492–1594, 1618–69, 1694–1748.) In each of the Amended Returns, Railroad Friction, for the first time, applied the single-factor apportionment formula applicable to public utility corporations under G.S. §§ 105-130.4(a)(6) and 105-130.4(r). (*Id*.) The Amended Returns each included the following explanation for amendment: "[t]his return is amended in order to utilize the required public utility single sales factor apportionment formula." (*Id*.) In the letter submitted to the Department with the Amended Returns, Railroad Friction identified one issue for review: "[w]hether Railroad Friction [ ] qualifies as a 'public utility' as defined by [G.S.] § 105-130.4(a)(6), and thus would be required to utilize the single[-] factor

apportionment formula for North Carolina corporate income and franchise tax purposes[.]" (*Id.* at pp. 1459–65.)

11. Additionally, Railroad Friction's 2011 Amended Return included a recalculation of its affiliated indebtedness for franchise tax purposes. (ECF No. 3, at ¶ 45; Response to Petition for Judicial Review, ECF No. 8, at ¶ 45.) Neither the 2011 Amended Return, nor the letter accompanying the return, explained that the recalculation of affiliated indebtedness was a basis for the 2011 Amended Return. (Rec., at pp. 1459–65.) The 2012 and 2013 Amended Returns did not recalculate Railroad Friction's affiliated indebtedness for tax years 2012 and 2013.

12. On February 2, 2016, the Department requested additional information from Railroad Friction regarding the basis upon which it was seeking treatment as a "public utility" under North Carolina law. (*Id.* at p. 877.) Railroad Friction responded to the request on March 3, 2016.

13. On April 4, 2016, after reviewing the Amended Returns and the supplemental information provided by Railroad Friction, the Department issued its Notice of Proposed Denial of Refund ("Notice of Proposed Denial"), denying Railroad Friction's refund requests for the 2011, 2012, and 2013 tax years because Railroad Friction did not meet the statutory definition of "public utility" and did not qualify to use the single-factor apportionment formula. (*Id.* at pp. 877–78.) The Notice of Proposed Denial did not address Railroad Friction's claim for refund for the 2011 tax year based on recalculation of its affiliated indebtedness.

14. Railroad Friction timely requested a departmental review of the Notice of Proposed Denial. (*Id.* at p. 809.) In its request for review, Railroad Friction raised only one objection to the Department's Notice of Proposed Denial: that the Department incorrectly concluded it was not a public utility under G.S. § 105-130.4(a)(6). (*Id.*) Railroad Friction did not object to, or seek review of, the Department's failure to address the recalculation of Railroad Friction's affiliated indebtedness for the 2011 tax year. (*Id.*)

15. The Department engaged in a review of its Notice of Proposed Denial. On February 9, 2017, the Department issued its Notice of Final Determination ("Final Determination"), again finding that Railroad Friction was not a public utility and that they could not claim the benefit of single-factor apportionment. (*Id.* at pp. 6–9.) The Final Determination did not address Railroad Friction's claim for refund for the 2011 tax year based on recalculation of its affiliated indebtedness.

16. On April 10, 2017, Railroad Friction timely appealed the Final Determination by filing a Petition for a Contested Case Hearing with OAH ("Petition"). (Rec., at p. 12.) On May 8, 2017, Railroad Friction filed an Amended Petition for a Contested Case Hearing ("Amended Petition"). (*Id.* at pp. 20–25.) In the Amended Petition, Railroad Friction asked OAH to reverse the Final Determination on the grounds that the Department "improperly concluded [Railroad Friction] does not meet the statutory definition of public utility." (*Id.* at pp. 24–25.) In neither the Petition nor the Amended Petition did Railroad Friction object to, or

seek review of, the Department's failure to address a claim for refund for the 2011 tax year based on recalculation of its affiliated indebtedness.

17. On May 12, 2017, Railroad Friction filed its Prehearing Statement with OAH. (*Id.* at pp. 28–34.) The Prehearing Statement identified one issue to be resolved: "[w]hether the Department erroneously concluded [Railroad Friction] does not meet the statutory definition of public utility for North Carolina corporate income and franchise tax apportionment purposes[.]" (*Id.* at p. 28.) Railroad Friction's Prehearing Statement did not object to, or seek review of, the Department's failure to address its claim for refund for the 2011 tax year based on recalculation of its affiliated indebtedness. On May 15, 2017, the Department filed its Prehearing Statement, which addressed only the issue of whether Railroad Friction was a public utility entitled to use of the single-factor apportionment formula. (*Id.* at pp. 35–40.)

18. In early October of 2017, while engaging in discovery during the contested case proceeding, Railroad Friction first expressly raised the issue of "affiliated indebtedness" as an alternative basis for its tax refund claims to the Department. On October 3, 2017, Railroad Friction responded to the Department's request for production of documents by submitting documents which amended Railroad Friction's affiliated indebtedness for the 2012 and 2013 tax years. (Rec., at pp. 103–114.) On October 4, 2017, Railroad Friction filed responses to the Department's interrogatories, which identified the recalculation of affiliated indebtedness for the 2011 through 2013 tax years as a basis for a refund. (*Id.* at pp. 94–102.) Additionally, on October 5, 2017, during the Department's deposition of

Railroad Friction's corporate designee, the deponent identified affiliated indebtedness as an alternative basis for Railroad Friction's position that it was due a refund of excess tax payments. (*Id.* at pp. 1385–1400.) Despite raising the affiliated indebtedness issue during discovery, Railroad Friction never further amended its Amended Petition or amended its Prehearing Statement to include the recalculation of affiliated indebtedness as an additional claim for refund to the 2011, 2012, or 2013 tax years.

19. On January 29, 2018, following the close of discovery in the contested case hearing, Railroad Friction and the Department filed motions for summary judgment on Railroad Friction's Amended Petition and submitted briefs supporting their motions. (*Id.* at pp. 68–86, 820–39.) In its brief, Railroad Friction argued it was a public utility entitled to use the single-factor apportionment formula and, alternatively, that it was entitled to net payables and receivables in its affiliated indebtedness calculation, thereby reducing its tax liability for the 2011 through 2013 tax years. (*Id.* at pp. 71–86.) This was the first time Railroad Friction presented the issue of affiliated indebtedness to OAH. In response, the Department argued that Railroad Friction did not qualify as a public utility under North Carolina law and that Railroad Friction failed to state a claim for affiliated indebtedness because it did not raise the claim in its request for departmental review, its Petition, Amended Petition, or Prehearing Statement. (*Id.* at pp. 906–911.)

20. On February 23, 2018, Administrative Law Judge J. Randolph Ward (hereinafter "ALJ") issued the Final Decision, which granted the Department's

motion for summary judgment, denied Railroad Friction's motion for summary judgment, and upheld the Department's Final Determination. (Rec., at pp. 913–18.) In the Final Decision, the ALJ concluded Railroad Friction was not a public utility within the meaning of G.S. § 105-130.4(a)(6), and that, because Railroad Friction "did not give [the Department] or OAH notice of [its affiliated indebtedness] claim in its Petition or Prehearing Statement, the issue concerning the calculation of affiliated indebtedness cannot be considered for the first time, over the objection of the [Department], after the parties have filed cross-motions for summary judgment." (*Id.* at p. 917.)

21. On March 9, 2018, Railroad Fiction filed a motion for reconsideration on the issue of affiliated indebtedness with OAH. (*Id.* at pp. 920–24.) Railroad Friction argued that OAH had the authority to consider the affiliated indebtedness issue by either amending the pleadings under G.S. § 1A-1, Rule 15(b) of the North Carolina Rules of Civil Procedure (hereinafter the North Carolina Rules of Civil Procedure are referred to as "Rule(s)") or reopening the case to hear the issue under Rule 60(b)(6). (*Id.*, at p. 933.) On March 26, 2018, the ALJ issued the Order Denying Reconsideration on the basis that the Department did not expressly or implicitly consent to trying the issue of affiliated indebtedness, and because the extraordinary circumstances necessary to set aside a judgment under Rule 60(b)(6) did not exist. (*Id.*) That same day, Railroad Friction submitted its Petition for Judicial Review, which is now before this Court. (ECF No. 3.)

22. Railroad Fiction filed a brief in support of its Petition for Judicial Review on September 21, 2018. (ECF No. 26.) The Department filed its response brief on November 7, 2018, and Railroad Friction filed a reply brief on November 20, 2018. (Br. in Opposition, ECF No. 27; Reply Br., ECF No. 28.) The Petition came before the Court for a hearing on November 29, 2018, and is now ripe for determination.

## II.    ANALYSIS

### A. Standard of Review

23. The task before this Court is to "determine whether the petitioner is entitled to the relief sought in the petition based upon [a] review of the final decision and the official record." G.S. § 150B-51(c). The appeal of a final decision of OAH in a contested case "arising from [a] summary judgment order[ ] [is] decided using a *de novo* standard of review." *Midrex Techs.*, 369 N.C. at 257, 794 S.E.2d at 791. Accordingly, the Court will "make a de novo determination of whether [the ALJ] correctly granted summary judgment in favor of the [Department] and against [Railroad Friction]." *Id.* "Under the *de novo* standard of review, the [Court] consider[s] the matter anew and freely substitute[s] its own judgment for [that of the lower court.]" *Id.* (alterations in original) (citations and quotations omitted). Summary judgment is appropriate where there is no factual dispute and only questions of law remain. *Wal-Mart Stores East v. Hinton*, 197 N.C. App. 30, 37, 676 S.E.2d 634, 638 (2009).

24. The facts of this case are not in dispute. Instead, Railroad Friction contends that the ALJ erred in his interpretation of G.S. § 105-130.4(a)(6) as applied

to the undisputed facts of this case. Railroad Friction contends that the ALJ improperly concluded that Railroad Friction was not a public utility. This raises an issue of statutory interpretation, which is a question of law for the Court. *Parkdale Am., LLC v. Hinton*, 200 N.C. App. 275, 278, 684 S.E.2d 458, 461 (2009). Railroad Friction contends that, if the proper interpretation of G.S. § 105-130.4(a)(6) is applied to the undisputed facts, it falls within the definition of a "public utility" for the tax years at issue.

B. *Railroad Friction Has Failed to Establish That It Is a Public Utility under G.S. § 105-130.4(a)(6).*

25. The Court first addresses whether Railroad Friction is a public utility corporation entitled to use single-factor apportionment in calculating its franchise and corporate income tax. To qualify as a public utility under G.S. § 105-130.4(a)(6), a corporation must satisfy two requirements. First, the corporation must be subject to the control of: "the North Carolina Utilities Commission, the Federal Communications Commission, the Interstate Commerce Commission, the Federal Energy Regulatory Commission, or the Federal Aviation Agency . . . ." G.S. §105-130.4(a)(6). Second, the Corporation must "own[ ] or operate[ ] for public use any plant, equipment, property, franchise, or license for the transmission of communications, the transportation of goods or persons, or the production, storage, transmission, sale, delivery or furnishing of electricity, water, steam, oil, oil products, or gas." *Id.*

26. Railroad Friction argues that it satisfies the above statutory requirements because (1) it is subject to the control of the Federal Railroad

Administration ("FRA"), the alleged successor for the ICC; and (2) it owns for public use property—brake pads and shoes—for the transportation of goods or persons. (ECF No. 26, at pp. 14–23.) Railroad Friction claims that the FRA maintains significant regulatory oversight over the brake system components that it manufactures.

27. In response, the Department argues that Railroad Friction does not qualify as a public utility under G.S. § 105-130.4(a)(6) because (1) Railroad Friction is not subject to the control of any government agency listed in the statute; (2) the FRA is not the successor to the ICC under the statute[4]; and (3) Railroad Friction does not conduct any activity of a public utility as defined by the statute. (ECF No. 27, at pp. 5–6.)

28. "[T]he first principle of statutory interpretation is to ascertain the intent of the legislature and to carry out such intention to the fullest extent." *Parkdale Am., LLC*, 200 N.C. App. at 278, 684 S.E.2d at 461 (internal citations omitted). As the North Carolina Supreme Court has noted,

> [t]he intent of the General Assembly may be found first from the plain language of the statute, then from the legislative history, 'the spirit of the act and what the act seeks to accomplish.' If the language of a statute is clear, the court must implement the statute according to the plain meaning of its terms so long as it is reasonable to do so.

*Lenox, Inc. v. Tolson*, 353 N.C. 659, 664, 548 S.E.2d 513, 517 (2001) (internal citations omitted). "[U]ndefined words are accorded their plain meaning . . . ."

---

[4] See paragraph 9 supra.

*Polaroid Corp. v. Offerman*, 349 N.C. 290, 297, 507 S.E.2d 284, 290 (1998), *disavowed in part by Lenox*, 353 N.C. at 663, 548 S.E.2d at 517. To determine the plain meaning of undefined words, our courts "ha[ve] used standard, nonlegal dictionaries as a guide." *Midrex Techs.*, 369 N.C. at 258, 794 S.E.2d at 792 (citation and quotations omitted).

29. If construing the statute is necessary, however, the primary focus is to ensure that the purpose of the legislature, as ascertained from the plain words of the statute, is accomplished. *Elec. Supply Co. v. Swain Electrical Co.*, 328 N.C. 651, 656, 403 S.E.2d 291, 294 (1991). In ascertaining legislative intent "regard must be had [for] the subject matter of the statute, as well as its language, i.e., the language of the statute must be read . . . contextually, and with reference to the matters dealt with . . . ." *Tar Landing Villas Owners' Assoc. v. Atlantic Beach*, 64 N.C. App. 239, 246, 307 S.E.2d 181, 186 (1983) (quoting *Victory Cab Co. v. Charlotte*, 234 N.C. 572, 576, 68 S.E.2d 433, 436 (1951) (quotations omitted)). Furthermore, "[c]ourts should give effect to the words actually used . . . and should neither delete words used nor insert words not used in the relevant statutory language . . . ." *Wilkie v. City of Boiling Spring Lakes*, 370 N.C. 540, 551, 809 S.E.2d 853, 861 (2018) (first alteration in original) (citations and quotations and omitted).

30. In addition, "[a] construction which operates to defeat or impair the object of the statute must be avoided if that can reasonably be done without violence to the legislative language." A court should also "avoid interpretations that create absurd or illogical results." *Ayers v. Bd. of Adjustment*, 113 N.C. App. 528, 531, 439

S.E.2d 199, 201 (1994). Rather, courts are directed to construe a statute "in a manner which harmonizes with the underlying reason and purpose of the statute." *Elec. Supply Co.*, 238 N.C. at 656, 403 S.E.2d at 294.

31.     Finally, in *Midrex*, the Supreme Court held that "any claim that a taxpayer has the right to utilize the single-factor formula set out in [G.S.] § 105-130.4(r) should be strictly construed *against, rather than in favor of, the taxpayer's contention . . . ."* 369 N.C. 250, 262–63, 794 S.E.2d at 795 (emphasis added).

### i. Railroad Friction is not a public utility because it is not subject to the control of any agency listed in G.S. § 105-130.4(a)(6).

32.     In deciding whether Railroad Friction is a public utility entitled to utilize the single-factor apportionment formula, the Court must determine whether it is subject to control of one of the agencies enumerated in the statute. Railroad Friction admits it is not subject to control of the North Carolina Utilities Commission, the Federal Communications Commission, the Interstate Commerce Commission, the Federal Energy Regulatory Commission, or the Federal Aviation Agency as required by statute. (Rec., at pp. 1273–76.) Railroad Friction claims instead to be subject to the control of the FRA. The FRA is not one of the listed agencies in the statute. Therefore, as an initial matter, the plain language of G.S. § 105-130.4(a)(6) supports the conclusion that Railroad Friction is not a public utility.

33.     Railroad Friction, however, contends that the FRA is the successor to the ICC and "Railroad Friction is 'subject to control' of the Federal Railroad Administration, the agency now vested with the Interstate Commerce Commission's

broad authority to regulate railroad safety." (ECF No. 26, at pp. 14–21.) In response, the Department argues: (a) the FRA is not listed in statute, and the Court cannot read the FRA into it; (b) the General Assembly amended the statute to remove the ICC in 2016, and did not substitute or include any other agency in its place; (c) the General Assembly did not choose to add the FRA during the 20 years following the ICC being abolished;[5] (d) the Surface Transportation Board was created as the successor to the responsibilities of the ICC, not the FRA; and (e) the plain language of statute does not contain any indication that the General Assembly intended to include "successor" agencies. (ECF No. 27, at pp. 14–18.)

34. The Court has thoroughly considered the parties' arguments and concludes that the plain language of the statute provides that only corporations subject to the control of one or more of the five agencies expressly named are eligible for the exemption permitting use of the single-factor apportionment formula for determining income and franchise tax liability. Railroad Friction fails to cite any North Carolina authority for the proposition that a statute, let alone a tax statute, can be interpreted so as to imply that a successor agency should be substituted for an abolished agency. To the extent Railroad Friction has cited federal and state court decisions from other jurisdictions holding that a successor agency can be substituted for an abolished agency, the Court finds those cases distinguishable from the facts involved here and does not find them persuasive under the circumstances of this case.

---

[5] The ICC was abolished in 1995. (ICC Term. Act of 1995, Pub. L. 104-88; Rec., at pp. 849–54.)

**ii. Railroad Friction is not a public utility because it does not own or operate its brake pads and linings for the transportation of goods or persons, or for the public use.**

35. Railroad Friction next argues that it is a public utility because it "owns for 'public use' property for the transportation of goods or persons." (ECF No. 26, at pp. 22–23.) The Court concludes that the ALJ correctly concluded that Railroad Friction does not meet this prong of the definition of public utility either.

36. In relevant part, the statute requires that a corporation claiming to be a public utility "owns or operates for public use any plant, equipment, property, franchise, or license for the transmission of communications, the transportation of goods or persons, or the production, storage, transmission, sale, delivery or furnishing of electricity, water, steam, oil, oil products, or gas." G.S. § 105-130.4(a)(6). The plain meaning of the operative language "owns . . . for public use any . . . property" is that the property at issue must be owned by the corporation at the time it is used to transport the goods or persons. Accordingly, Railroad Friction must prove that (a) it owns property for public use, and (b) it uses the property to transport goods or persons.

37. Railroad Friction argues that it "owns" the brake pads and linings that it produces for public use because it is willing to sell them not only to its railway customers but to any member of the "public." (ECF No. 26, at pp. 22–23.) It further argues that it satisfies the "use" requirement because the brake pads, once purchased by a customer, "can be used in the transportation of goods or persons . . . ." (*Id.*) The Court disagrees.

38.     First, Railroad Friction does not own its brake pads and linings for "public use" as required by the statute.  According to Railroad Friction, if a corporation owns property and is willing to sell the property to anyone, then it owns the property for "public use."  (*Id.* at p. 22.)  However, the word "use" cannot be stretched to mean "sale to" in this context.  To the contrary, "use" is defined as "to employ for some purpose; to put into service; to make use of."  Dictionary.com, *Use*, http://www.Dictionary.com/browse/use (last viewed February 18, 2019).  The undisputed facts show that at the time Railroad Friction owns the brake pads and linings it is not using them in the transportation of goods or persons.  Railroad Friction owns the brake pads and linings for sale to rail companies.  It is those rail companies, once they have purchased and installed the brake pads in a rail vehicle, that own and use the pads and linings to transport goods and persons.

39.     The Court declines Railroad Friction's invitation to adopt a broad interpretation of "public use" as it would render the term meaningless and allow every manufacturing company or retailer that owned property it was willing to sell to anyone to claim it owns its property for a public use.  *See HCA Crossroads Residential Ctrs. v. N.C. Dep't of Human Res.*, 327 N.C. 573, 578, 398 S.E.2d 466, 470 (1990) ("[A] statute must be construed, if possible, to give meaning and effect to all of its provisions.")  The Court also notes that Railroad Friction has not presented any facts or authority that shows that other manufactures who make and sell products or equipment to customers that use the products to provide public services (e.g., manufactures of telephone equipment or manufactures of parts used in generating

electricity, etc.) claim to be or are treated as "public utilities" under G.S. § 105-130.4(a)(6).

40. Finally, public utilities are broadly defined as companies which offer certain fundamental services to the general public, hence the name "public" utility. *See e.g.*, *Public Utility*, Black's Law Dictionary (10th ed. 2014) ("A company that provides necessary services to the public, such as telephone lines and service, electricity, and water."); *Public Utility*, Ballentine's Law Dictionary (3rd ed. 2010) ("A corporation or business rendering, and devoting its property to, a public use or service. . . . Including every common carrier, gas, electric, telephone, telegraph, water, and heat corporation, and warehousemen, where the service is performed for, or the commodity delivered to, the public generally."). [6] The plain language of the statute leaves little doubt that the General Assembly intended for the public utility exemption in G.S. § 105-130(r)(6) to apply to those corporations that provide public services and not corporations that sell parts and equipment used by corporations in providing public services. *Lenox, Inc.*, 353 N.C. at 664, 548 S.E.2d at 517 ("The intent of the General Assembly may be found first from the plain language of the statute."). Indeed, if the Court were to interpret the statute as proposed by Railroad Friction, it would produce the absurd result of permitting any private corporation that manufactures and sells component parts and equipment used by a public utility that transmits communications, transports goods or persons, or produces, stores,

---

[6] North Carolina courts may also rely on legal dictionaries when construing the plain meaning of words. *State v. Webb*, 358 N.C. 92, 97, 591 S.E.2d 505, 511 (2004) (consulting Black's Law Dictionary to construe the plain meaning of words in a statute); *Hieb v. Lowery*, 344 N.C. 403, 410, 474 S.E.2d 323, 327 (1996) (same).

transmits, sells, delivers or furnishes electricity, water, steam, oil products, or gas" to claim exemption for the three factor apportionment of its income and franchise taxes. *Ayers*, 113 N.C. App. at 531, 439 S.E.2d at 201 (Courts should "avoid interpretations that create absurd or illogical results"). This cannot be what the General Assembly intended in enacting G.S. § 105-130(r)(6).

### iii. The last antecedent rule should not be applied to the statute.

41. In the Petition for Judicial Review, Railroad Friction contends that the ALJ erred in concluding that the "last antecedent rule" did not apply to the interpretation of G.S. § 105-130.4(a)(6). (ECF No. 3, at p. 10.) However, Railroad Friction made no argument in support of this contention in its brief in support of the Petition or in its reply brief. (ECF Nos. 26, 28.) In response to the Court's questioning at the hearing, Railroad Friction claimed it did not intend to abandon the contention. Therefore, the Court will consider the argument that the last antecedent rule should be applied to its interpretation of G.S. § 105-130.4(a)(6).

42. The last antecedent rule is a rule governing grammar that Courts use at times to aid in interpreting statutes and contracts. *See Novant Health, Inc. v. Aetna U. S. Healthcare of the Carolinas, Inc.*, 2001 NCBC LEXIS 1, at *12 (N.C. Super. Ct. Mar. 8, 2001). Under the last antecedent rule, "relative and qualifying words, phrases, and clauses ordinarily are to be applied to the word or phrase immediately preceding and, *unless the context indicates a contrary intent*, are not to be construed as extending to or including others more remote." *HCA Crossroads Residential Ctrs.*, 327 N.C. at 578, 398 S.E.2d at 469 (emphasis added). The rule "is

not an absolute rule, however, but merely one aid to the discovery of legislative intent." *Id.* Thus, the rule "will yield to the evident sense and meaning of the statute" and will not be applied if it produces illogical results. *Hagood v. Doughton*, 195 N.C. 811, 819, 143 S.E. 841, 845 (1928); *Novant Health, Inc.*, 2001 NCBC LEXIS 1, at *13 ("In essence, the [rule] of the last antecedent only applies if it is logical to apply it.")

43.     Petitioner argues that, pursuant to the last antecedent rule, the words following "license" in G.S. § 105-130.4(a)(6) should be read as modifying only the word "license." Thus, under Petitioner's desired reading of the statute, a corporation would be considered a "public utility" if it was subject to control of one of the listed agencies and "owns or operates for public use any plant, equipment, property [or] franchise." It would not be required to show that it owned or operated the plant, equipment, property or franchise for "the transmission of communications, the transportation of goods or persons, or the production, storage, transmission, sale, delivery or furnishing of electricity, water, steam, oil, oil products, or gas." Only a corporation claiming to be a public utility solely on the basis that it owned a "license" would need to establish that the license was used for "the transmission of communications, the transportation of goods or persons, or the production, storage, transmission, sale, delivery or furnishing of electricity, water, steam, oil, oil products, or gas."

44.     The Court concludes that because the context and the subject matter of the statute clearly indicate a contrary intent, the application of the last antecedent rule to this provision of the statute is inappropriate. The language which Railroad Friction would have the Court read as not applying to owners or operators of "plant[s],

equipment, property, or franchise[s]" describes the very type of services that are generally understood to define a public utility. *See e.g.*, *Public Utility*, Black's Law Dictionary (10th ed. 2014); *Public Utility*, Ballentine's Law Dictionary (3rd ed. 2010). It is evident that the legislature included the list of services in the statute to further narrow the definition of public utility for all corporations, not just those who own a license. Only by ignoring the logical and plain meaning of the statute could the Court apply the last antecedent rule as requested by Railroad Friction. Therefore, the Court declines to do so.

45. In conclusion, the only way the Court could reach the result proposed by Railroad Friction is by interpreting the legislature's definition of public utility in a manner entirely perverse from the evident intent of the General Assembly based upon a plain reading of the statute.

46. The undisputed facts establish that Railroad Friction does not own for public use property for the transportation of goods or persons, and the Department is entitled to judgment as a matter of law on Railroad Friction's claim that it is a public utility within the meaning of G.S. § 105-130.4(a)(6).[7] Therefore, the Court concludes that the Final Decision of OAH granting the Department's motion for summary judgment on the issue of whether Railroad Friction is a public utility, and denying Railroad Friction's motion for summary judgment on this issue, should be AFFIRMED, and Railroad Friction's Petition for Judicial Review should be DENIED.

---

[7] To the extent Railroad Friction argues that ignoring the inclusion of the ICC in the statute after it was abolished creates an unacceptable hole in the statute for which another agency or agencies must be substituted, (ECF No. 26, at pp. 17–18), the Court notes that there is no evidence, nor does Railroad Friction claim, that it was ever subject to the control of the ICC.

*C. Railroad Friction Did Not Properly Plead Its Claim for Refund Based on Recalculation of Its Affiliated Indebtedness.*

47.    Railroad Friction next contends that the ALJ erred in holding that he could not consider the claim for refund based on affiliated indebtedness because Railroad Friction failed to properly plead the claim for affiliated indebtedness and the Department and OAH did not have proper notice of the affiliated indebtedness claim.  (ECF No. 26, at pp. 7–13.)  Railroad Friction claims that the ALJ could properly consider the affiliated indebtedness claim because of the equitable nature of a tax refund claim which requires an assessment of the taxpayer's entire tax liability for the years at issue.  Railroad Friction also argues that it was permitted, by statute, to change the basis for its refund claim at any time during the refund proceedings.  Finally, Railroad Friction contends that it provided adequate notice of its claim to the Department by recalculating affiliated indebtedness in the 2011 Amended Return filed with the Department in October 2015; by providing 2012 and 2013 Amended Returns to the Department as part of discovery responses it served on the Department in October 2017 during the contested case proceeding; and because the Department's attorney questioned Railroad Friction's representative about affiliated indebtedness during a deposition in the contested case proceeding.  (ECF No. 26, at pp. 10–11.)  The Department argues that the ALJ correctly decided Railroad Friction did not provide notice of the affiliated indebtedness issue because it did not raise the claim in its Petition, Amended Petition, or Prehearing Statement, and, therefore, failed to state a claim based on affiliated indebtedness and failed to comply with Rule

8(a) of the North Carolina Rules of Civil Procedure (hereinafter, "Rules"). (ECF No. 27, at pp. 20–23.)

48. Railroad Friction first argues that "a tax refund action, although an action at law, is equitable in its function." (ECF No. 26, at p. 7.) Railroad Friction contends that because of this, a taxpayer seeking a refund may raise ever-shifting new and alternative grounds at any time during the proceedings considering such action whether or not it has provided prior notice of the theory. (*Id.* at pp. 8–9.) In effect, Railroad Friction contends that because of the nature of a tax refund claim, no procedural rules or deadlines for raising grounds for the refund may be applied to the proceedings adjudicating the refund claim. (*Id.*) In support of this contention, Railroad Friction relies primarily on decisions of the federal courts deciding federal tax claims, and decisions of various other state jurisdictions. (*Id.* at pp. 7–10.)

49. The Court has thoroughly reviewed the cited decisions, and finds them to be factually dissimilar from the case *sub judice*, particularly since they do not address the statutory and regulatory framework applicable in North Carolina. *Wake County v. Hotels*, 2012 NCBC LEXIS 63, at *34–35 (N.C. Super. Ct. Dec. 19, 2012) (finding cases from other jurisdictions unpersuasive "because they do not interpret the statutes, ordinances, and resolutions at issue in this action."). In fact, none of the case decisions cited by Railroad Friction involve interpretation of any state's statutes and regulations governing an administrative proceeding seeking a tax refund.

50. Railroad Friction also argues that there is statutory authority allowing it to change the basis for its tax refund claim at any time during the review of an

amended tax return, eliminating the need to provide OAH or the Department of the basis of its claims for refunds.  (ECF No. 26, at pp. 2, 9–10.)  In support of this position, Railroad Friction relies on G.S. § 105-241.7(b), which provides as follows:

> Initiated by Taxpayer. – A taxpayer may request a refund of an overpayment made by the taxpayer by taking one of the actions listed in this subsection within the statute of limitations for obtaining a refund. A taxpayer may not request a refund of an overpayment based on a contingent event as defined in G.S. 105-241.6(b)(5) until the event is finalized and an accurate and definite request for refund of an overpayment may be determined. The actions are:
>
> (1)      Filing an amended return reflecting an overpayment due the taxpayer.
>
> (2)      Filing a claim for refund. The claim must identify the taxpayer, the type and amount of tax overpaid, the filing period to which the overpayment applies, and the basis for the claim. *The taxpayer's statement of the basis of the claim does not limit the taxpayer from changing the basis.*

*Id.* (emphasis added).  Railroad Friction contends that the language providing that "[t]he taxpayer's statement of the basis of the claim does not limit the taxpayer from changing the basis" permits a taxpayer seeking a refund to raise new bases for their claim for refund at any time in the administrative process of seeking a refund.  The Department's argument in response is that even "[a]ssuming [G.S. § 105-241.7(b)(2)] does permit a taxpayer to change the basis of its refund claim [ ], the statute does not obviate the notice pleading requirements under Civil Rule 8(a)."  (ECF No. 27, at p. 22.)  In other words, the Department argues that Railroad Friction's ability to change the basis for its refund claim, at least once a contested case hearing is commenced, is subject to the Rules.  (*Id.* at pp. 20–23.)

51.    Railroad Friction also argues that the Department has taken the position that it is not bound to the requirements of the Rules in changing the basis for assessing a claim for a refund of a tax payment under the mirror-image provision of the Revenue Act.  (ECF No. 28, at pp. 2–4; *citing N.C. Dep't of Revenue v. First Petroleum Servs.*, 2018 NCBC LEXIS 19 (N.C. Super Ct. Feb. 23, 2018).)  In *First Petroleum Servs.*, the Department relied on the language in G.S. § 105-241.9(c), which provides that the Department is not prohibited "from changing the basis" upon which it is assessing a tax payment, to claim it was statutorily entitled to raise a new basis for its tax assessment at the summary judgment stage of a contested case.  2018 NCBC LEXIS 19, at *5–10.  Railroad Friction argues that "the Department should not be permitted to advance two profoundly opposed views of the very same statutory language depending on whether it is the Department or the taxpayer who seeks to assert an alternative basis during the course of a tax appeal."  (ECF No. 28, at p. 3.)

52.    The Court in *First Petroleum*, however, did not address whether the Department had statutory authority to change the basis for its assessment at the summary judgment stage of a contested case, because it decided the case on other grounds.  2018 NCBC LEXIS 19, at *9–10.  Thus, the doctrine of judicial estoppel is not applicable here because the Department did not succeed in its argument in First Petroleum.  *See Estate of Hurst v. Jones*, 230 N.C. App. 162, 167, 750 S.E.2d 14, 18–19 (2013) (judicial estoppel applies "[w]here a party assumes a certain position in a legal proceeding, [ ] *succeeds in maintaining that position*, [and] thereafter, simply because his interests have changed, assume[s] a contrary position" (citation and

quotations omitted)). While the Court is not enamored by a party taking contradictory positions in different cases, the Department is not prevented from doing so under the circumstances here.

53.     Thus, the question before the Court is whether Railroad Friction should be permitted to state a new basis for its claim for refund in a summary judgment brief to the ALJ at the contested case stage of the proceedings. The Court concludes that Railroad Friction is not be permitted to do so.

54.     The statutory provisions governing a claim for refund by a taxpayer are contained in G.S. §§ 105-241.6–16. To seek a refund, a taxpayer must file an amended return or a "claim for refund." G.S. § 105-241.7(b). The statute does not define the term "claim for refund," and neither party has provided any authority clarifying the difference, if any, between an amended return and a claim for refund.[8] The Department is then required to take certain actions with regard to the claim for refund within six months after receipt of the claim. G.S. § 105-241.7(c). The actions include denying the claim and issuing a notice of proposed denial. G.S. § 105-241.7(c)(3). The statute further provides that "[t]he statement of the basis of the denial does not limit the Department from changing the basis." G.S. § 105-241.7(d)(1).

55.     A taxpayer may request a review of a proposed denial pursuant to G.S. § 105-241.11. The request for review must be filed with the Department and "must

---

[8] In this case, Railroad Friction filed the Amended Returns accompanied by a lengthy letter to the Department containing a detailed argument of Railroad Friction's contention that it is a public utility under G.S. § 105-130.4(a)(6). The letter did not address the affiliated indebtedness claim.

be in the form prescribed by the Secretary and include an explanation for the request for review." G.S. § 105-241.11(a). Upon a request for review of a proposed denial, "the Department must conduct a review" and take action subject to the provisions of G.S. § 105-241.13. "If . . . the Department and the taxpayer are unable to resolve the taxpayer's objection to the proposed denial, the Department must send the taxpayer a notice of final determination concerning the refund." G.S. § 105-241.14(a). Additionally, the statute provides that "[t]he statement of the basis for the determination does not limit the Department from changing the basis." *Id.*

56. A taxpayer who wishes to have a final determination by the Department reviewed must "fil[e] a petition for a contested case hearing at [OAH] in accordance with Article 3 of Chapter 150B of the General Statutes." G.S. § 105-241.15(a). The filing of a contested case petition initiates a distinct part of the administrative review process and is subject to certain statutory and procedural requirements under Article 3 of the Administrative Procedure Act ("APA") and the North Carolina Rules of Civil Procedure that are not applicable at the Departmental review stage.

57. First, a taxpayer filing a petition for contested case must comply with G.S. § 150B-23. Under G.S. § 150B-23(a), a petition for contested case filed by a non-agency petitioner must "state facts tending to establish that the agency named as the respondent has deprived the petitioner of property, has ordered the petitioner to pay a fine or civil penalty, or has otherwise substantially prejudiced the petitioner's rights . . . ." The petitioner also must state that the agency either: "(1) [e]xceeded its authority or jurisdiction; (2) acted erroneously; (3) failed to use proper procedure; (4)

acted arbitrarily or capriciously; or (5) failed to act as required by law or rule." G.S. § 150B-23(a). In other words, to state a proper claim for relief under G.S. § 150B-23 a non-agency petitioner must allege facts establishing that the agency acted improperly. *Overcash v. N.C. Dep't of Env't & Natural Res.*, 179 N.C. App. 697, 704, 635 S.E.2d 442, 447 (2006); *Town of Wallace v. N.C. Dep't of Env't & Natural Res., Div. of Water Quality*, 160 N.C. App. 49, 56, 584 S.E.2d 809, 814–15 (2003).

58. The ALJ assigned to a contested case may require the parties to file prehearing statements. G.S. § 150B-23(a2). The regulations regarding contested case proceedings provide, in relevant part, that

> [t]he administrative law judge may serve all parties with an Order for Prehearing Statements together with, or after service of, the Notice of Contested Case Filing and Assignment. The parties thus served shall, within 30 days of service, file the requested statements setting out the party's present position on the following:
>
> (1) The nature of the proceeding and the issues to be resolved;
>
> (2) A brief statement of the facts and reasons supporting the party's position on each matter in dispute;
>
>  . . . .

26 N.C.A.C. 3.0104. Nowhere in Article 3 of the APA does it provide a taxpayer a right to unilaterally change the grounds, or assert new grounds, for its refund claim.

59. Second, in a contested case proceeding, a petitioner must comply with the Rules of Civil Procedure. 26 N.C.A.C. 3.0101 ("The Rules of Civil Procedure as contained in G.S. 1A-1 and the General Rules of Practice for the Superior and District Courts as authorized by G.S. 7A-34 and found in the Rules Volume of the North

Carolina General Statutes shall apply in contested cases in the Office of Administrative Hearings (OAH)"). Under Rule 8(a), any pleading "which sets forth a claim for relief" must contain "[a] short and plain statement of the claim sufficiently particular to give the court and the parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved showing that the pleader is entitled to relief . . . ." In a contested case before OAH, the "pleadings" include the petition for contested case and the prehearing statement. *See Lee v. N.C. DOT*, 175 N.C. App. 698, 703, 625 S.E.2d 567, 571 (2006) (construing whether the petitioner alleged a discrimination claim in a contested case before OAH and treating the petition and the prehearing statement as the relevant pleadings). A petitioner sufficiently states a claim pursuant to Rule 8(a) if it "gives the other party notice of the nature and basis of the claim sufficient to enable the party to answer and prepare for trial." *Keys v. Duke Univ.*, 112 N.C. App. 518, 520, 435 S.E.2d 820, 821 (1993) (citation and quotations omitted). Again, it is undisputed that Railroad Friction did not state its claim for refund based on affiliated indebtedness in its Petition, Amended Petition, or Prehearing Statement.

60. Additionally, Rule 15 applies to the amendment of pleadings in a contested case proceeding, and provides the procedure by which a petitioner may add claims or advance new, alternative theories. Under Rule 15, amendments can be accomplished by right, by leave of court, or via an amendment to conform to the evidence. Railroad Friction appears to argue that the Court should amend its petition to conform to the evidence it introduced to the Department during discovery. (ECF

No. 28, at p. 4.) Rule 15(b) amendments to conform to the evidence are generally made during trial, "[w]hen issues not raised by the pleadings are tried by the express or implied consent of the parties . . . ." A trial judge can allow amendments to conform to the evidence (1) where the parties consent to trying issues not raised by the pleadings, or (2) when the presentation of the merits is served by consideration of the evidence and the non-movant fails to convince the court that the admission of the evidence will prejudice the non-movant in maintaining his action or defense on the merits. N.C. R. Civ. P. 15(b). But, where a party fails to seek leave to add claims earlier in a proceeding and the non-movant does not expressly or impliedly consent to try the claim, a court may exercise its discretion to deny the amendment. *See Faucette v. 6303 Carmel Rd., LLC*, 242 N.C. App. 267, 277, 775 S.E.2d 316, 325 (2015). Here, it is undisputed that the Department expressly objected to and refused to consent to Railroad Friction raising the claim for refund based on affiliated indebtedness when Railroad Friction raised it in its brief in support of its motion for summary judgment submitted to the ALJ. There was no consent to try the claim.

61. A thorough review of the statutory and regulatory requirements applicable to a claim for refund leads the Court to conclude that Railroad Friction's right to "chang[e] the basis" of its refund claim as provided in G.S. § 105-241.7 applies only during the departmental review of its claim for refund. Once a final determination is issued by the Department and a contested case proceeding is commenced with OAH pursuant to G.S. § 241.15 and G.S. § 150B-23, Railroad Friction's right to change or raise additional bases for its refund claim is limited by

the statutory provisions of Article 3 of the APA and the Rules of Civil Procedure. Any other reading of the statutes would render meaningless the requirements that the parties file certain pleadings with the OAH in a contested case proceeding and that the Rules of Civil Procedure be applied during the proceedings. The contested case procedure is structured very much like a civil lawsuit filed in the General Court of Justice. The contested case process marks the end of the investigative review process and the beginning of an adversarial proceeding in front of a fact finder, and provides for discovery, motions practice, and a final adjudicatory decision at the administrative level. It is reasonable that the completion of the less formal investigative phase of the administrative review process within the Department, and the initiation of the adversarial administrative lawsuit phase of the process, would mark the end of the parties' ability to unilaterally change their positions without a more formal, proper notice of the claims at issue permitted by the hearing officer in her discretion.

62. The statutory structure of the administrative review process supports such a conclusion. All references to a taxpayer's ability to change the basis for its claim, and the Department's ability to change the basis for the grounds for an assessment against a taxpayer, are contained in the statutory provisions applicable to the departmental review process. *See* G.S. §§ 105-241.7(b)(2), 241.7(d)(1), 241.9(c)(1), 241.14(a), and 241.14(b)(1). The statutes providing for a contested case hearing contain no reference to a taxpayer being permitted to change the basis for its refund claim. Rather, the Rules of Civil Procedure apply and control, and any change

of the basis for a taxpayer's refund claim must be accomplished through amendment of the pleadings.

63. A review of the record reveals that Railroad Friction did not raise the claim for affiliated indebtedness at any time in the departmental review or contested case phases of this case. Railroad Friction's 2011 Amended Return, and the letter which accompanied it, failed to give adequate notice to the Department that it sought review of the affiliated indebtedness issue. The only explanation Railroad Friction provided for the Amended Returns was that it sought use of the single-factor apportionment formula applicable to public utilities. (Rec., at pp. 1459–65, 1549, 1620, 1696.) The Department's Notice of Denial denied Railroad Friction's refund request and relied solely on the Department's conclusion that Railroad Friction did not qualify as a public utility. (*Id.* at pp. 807–08.)

64. Railroad Friction requested a departmental review of the Notice of Denial, but only objected to the Department's conclusion that it was not a public utility. (*Id.* at p. 809.) Railroad Friction never asked the Department to consider the issue of affiliated indebtedness. Therefore, the Department's Final Determination again addressed only the public utility issue. (*Id.* at pp. 42–45.)

65. After receiving the Final Determination from the Department, Railroad Friction filed with OAH its Petition, Amended Petition, and Prehearing Statement. The only issue Railroad Friction asked OAH to review in each of the pleadings was whether the Department erred in concluding it was not a public utility for corporate and franchise tax purposes. (*Id.* at pp. 1–5, 20–34.) None of the pleadings alleged an

alternative theory for refund based on affiliated indebtedness. Railroad Friction never moved to amend the Petition, Amended Petition, or Prehearing Statement to include the claim for affiliated indebtedness at any time during the contested case proceeding. The first time Railroad Friction raised the issue of affiliated indebtedness was in its brief in support of its motion for summary judgment at OAH. (*Id.* at pp. 68–86.) The Department objected to OAH's consideration of the issue because Railroad Friction failed to raise it in its pleadings and did not provide notice that the alternative basis was before OAH for consideration. (*Id.* at p. 910.)

66. Railroad Friction contends that the ALJ should have found that it properly raised the affiliated indebtedness claim by providing discovery responses to the Department during the contested case proceeding that raised the issue, including, for the first time, producing new, amended returns for tax years 2012 and 2013 recalculating Railroad Friction's affiliated indebtedness for those two years. (ECF No. 26, at p. 10.) The Court disagrees. First, the fact that Railroad Friction provided the new amended returns and discovery responses regarding the affiliated indebtedness claim raises the substantial question as to why Railroad Friction did not properly attempt to amend its Amended Petition or Prehearing Statement to raise the claim.[9] Second, providing information during discovery is not a substitute for

---

[9] It also raises the question of whether Railroad Friction's claims for refund based on affiliated indebtedness for tax year 2012 and 2013 could ever be considered at the contested case stage when they were not presented to the Department at any time during the Departmental review phase. Review by contested case under G.S. § 150B-23(a) is predicated on the taxpayer claiming that the Department "(1) [e]xceeded its authority or jurisdiction; (2) [a]cted erroneously; (3) [f]ailed to use proper procedure; (4) [a]cted arbitrarily or capriciously; or (5) [f]ailed to act as required by law or rule." To satisfy this prerequisite to relief regarding the 2012 and 2013 tax years, Railroad Friction would have to make the illogical argument

properly pleading a claim as required by G.S. § 150B-23(a) and Rule 8(a). In fact, it is one of the functions of Rule 15(b) to permit the Court to prevent a party from being forced to try claims of which it was not properly notified without that party's consent. In this case, the Department objected to adjudicating the affiliated indebtedness claim when first expressly raised in the proceeding at the summary judgment stage, and the ALJ properly exercised his discretion in denying an amendment at that time.

67. In light of the above, Railroad Friction failed to allege facts supporting a claim for relief based on affiliated indebtedness as required by G.S. § 150B-23(a) and Rule 8(a). Therefore, the Court concludes that the Final Decision of OAH granting summary judgment to the Department on Railroad Friction's refund request based on affiliated indebtedness, and denying Railroad Friction's motion for summary judgment, should be AFFIRMED, and Railroad Friction's Petition for Judicial Review should be DENIED.

## III. CONCLUSION

68. For the reasons set forth above, the Court concludes that the administrative law judge properly determined that Railroad Friction is not a public utility entitled to single-factor tax apportionment, and properly concluded that Railroad Friction's affiliated indebtedness basis for its refund claim was not properly before OAH with notice to the Department as required by G.S. § 150B-23(a) and Rule

---

that the Department acted improperly by failing to consider an issue that Railroad Friction never expressly presented to it prior to the Final Determination. It was Railroad Friction who allegedly miscalculated affiliated indebtedness in its original returns, and in its 2012 and 2013 Amended Returns, and Railroad Friction never raised the issue to the Department during the Departmental Review phase. It would make no sense to permit the company to seek review of an issue on which the Department never ruled.

8(a).  Accordingly, the Court holds that the administrative law judge did not err in granting summary judgment in favor of the Department, and denying summary judgment to Railroad Friction and in upholding the Department's Final Determination of February 9, 2017.  Accordingly, Railroad Friction's Petition for Judicial Review is DENIED.


        SO ORDERED, this the 21st day of February, 2019.


                          /s/ Gregory P. McGuire
                          Gregory P. McGuire
                          Special Superior Court Judge for
                          Complex Business Cases